NELSON K *CH, APPELLANT, V. ANNA KUTCH, APPELLEE.

FILED DECEMBER 10, 1910. No. 16,884.

1. **Marriage:** VALIDITY. The consent of competent parties is essential to a valid contract of marriage.

2. ———: SUIT TO ANNUL: QUANTUM OF PROOF. If a contract of marriage has not been consummated, the court should require no greater quantity of proof to sustain a finding of fraud or of mental incapacity in a suit to annul that contract than it demands to sustain those issues in any other cause.

3. ———: ———: EVIDENCE. If, in an action to annul a contract and ceremony of marriage because of the plaintiff's alleged mental incapacity and the defendant's alleged fraud, it appears that the plaintiff at the time he became a party to that contract and ceremony successfully managed property of the value of about $6,000, which he had accumulated, that he had been acquainted with the defendant five years preceding their marriage, courted her openly four months preceding the ceremony, which he voluntarily suggested should take place, successfully withstood one-half her demands for a marriage settlement preceding said celebration, and understood the nature of the contract and the duties and responsibilities incident to the marriage relation, the court will not dissolve the marriage, although the plaintiff is advanced in years, 46 years older than his wife, slovenly in habits, with impaired vision and hearing, and is forgetful concerning recent transactions, and the defendant probably was actuated largely by mercenary motives in entering into the contract and did not accord the plaintiff all of his conjugal rights.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE. Affirmed.

Charles P. Craft and J. H. Grosvenor, for appellant.

O. A. Abbott and J. H. Edmondson, contra.

ROOT, J.

This is the second appeal of this case. Our former opinion is reported in 85 Neb. 702. After the cause was remanded the case was retried upon the evidence adduced

at the first trial and the testimony of twelve witnesses, most of whom did not testify during the first hearing. Most of the additional testimony relates to the plaintiff's physical and mental condition at the time of, and prior to, the marriage under consideration. Many of these witnesses testified that the plaintiff was not mentally competent to transact business. The defendant prevailed at the second trial, and the plaintiff has appealed.

Counsel for the plaintiff earnestly argued that they produced sufficient evidence at the last trial to sustain the plaintiff's charge that his marriage to the defendant is the creature of fraud and undue influence. They further contend that our criticism of the plaintiff's children, because they acquired control of their father's property, is unjust and not sustained by the evidence. We did not intend to unjustly criticise those children, and concede they acted in all things for the welfare of their father. By the terms of the contract between the plaintiff and his children the latter agreed to sell so much of the corpus of his estate as might be necessary to maintain him in comfort; but while they were planning for his maintenance they were compelling his wife to become dependent upon their will for her support. We have again carefully read the evidence adduced at the first trial and find nothing to shake our confidence in our former opinion and judgment.

Waiving the point argued by the defendant, that the plaintiff does not state in his petition facts sufficient to constitute a cause of action, and considering the case in the light of the evidence, we are convinced the plaintiff has signally failed to make out a case justifying a court of equity to interfere in his behalf. At the time the contract was entered into and the ceremony performed, the plaintiff was advanced in years, his eyesight was poor, his hearing impaired, his memory treacherous, and his personal habits uncleanly; but he successfully controlled his property, consisting of rented houses and notes of hand, and had preserved his estate intact. The plaintiff is now, and for many years has been, an officer of the church of which he is a

member. The record of the plaintiff's testimony indicates, connected thought, reasoning power, and a perfect understanding of the responsibilities and obligations of the marriage relation. If we accept the plaintiff's version of his courtship, it extended over four months' time, and when his sweetheart demanded a property settlement before marriage, he met her not more than half way with the statement that, if she was not content to accept a deed for one lot and a house, their relations should cease, and before the marriage ceremony he gave consideration to the means whereby he might support his wife. Subsequently we find him insisting upon all of his conjugal rights.

We are advised by the evidence that the marriage between the litigants has not been consummated, so that the weighty considerations of public policy, which, except for the gravest reasons, forbid the annulment of consummated marriages, do not influence our judgment in the instant case. It is true, as counsel for the plaintiff argue, that parties mentally incompetent to make other contracts cannot lawfully enter into a contract of marriage. The test of mental competency to enter into a contract of marriage formulated by Sir James Hannen in *Durham v. Durham,* 10 L. R. Prob. Div. (Eng.) 80, seems reasonable and as nearly accurate as a general proposition of law with respect to so complicated a subject can be stated. The rule announced is that a person is competent to enter into a contract of marriage if he has "a capacity to understand the nature of the contract, and the duties and responsibilities which it creates." In *Atkinson v. Medford,* 46 Me. 510, upon the issue of the mental capacity of a person to enter the marriage relation, an instruction given by the trial judge to the effect "that the same degree of mind sufficient to enable him to enter into a valid contract, or make a valid deed or will, would be sufficient to enable him to contract matrimony," was approved. In (*Anonymous*) 4 Pick. (Mass.) 32, we find a statement by the court that "they felt bound to require such evidence of insanity as in a civil action would justify a jury in finding the party incapable

of making a contract; that anything short of this would open a door to great abuses, * * * and that the fact of a party's being able to go through the marriage ceremony with propriety was *prima facie* evidence of sufficient understanding to make the contract." This statement of the law is somewhat radical, if applied to an unconsummated marriage, and does not receive our unqualified approval, but is cited for the purpose of showing the trend of judicial thought with regard to the subject under consideration. See, also, *Kern v. Kern,* 51 N. J. Eq. 574. Measured by any reasonable legal test, the evidence is overwhelming that the plaintiff had mental capacity to make the contract he entered into with the defendant.

Passing to the issue of fraud in inducing the plaintiff to enter the marriage relation, we refer the reader to our former opinion, which fairly reflects the evidence upon this point. No other evidence except the testimony tending to prove mental incompetency was adduced to sustain this issue at the last trial. As we understand the evidence, no false representations were made to the plaintiff to induce him to court or to marry the defendant, nor did she conceal from him any fact or circumstance he was entitled to know in advance of their marriage. We do not commend the judgment of either party in becoming man and wife, nor do we approve the defendant's conduct toward her infirm and impatient husband; but upon the record before us we hold that the plaintiff should not prevail.

The decree of the district court, therefore, is

AFFIRMED.