FANNIE SVANDA, APPELLEE, v. FRANK SVANDA, JR., APPELLANT.

FILED MARCH 28, 1913. No. 17,126.

1. **Divorce: NONSUPPORT.** Where a husband, having sufficient ability, without just cause, fails and absolutely refuses to contribute anything to the support of his wife, the court may grant her a decree of divorce.

2. **Marriage: ANNULMENT: INSANITY.** Mere weakness of mind is not a sufficient ground for the annulment of a marriage, unless it amounts to idiocy or insanity. Nor will circumstances tending to show fraud, combination or circumvention on the part of the father and friends of the wife to induce one to marry his daughter give the court authority to decree the annulment of the marriage, unless the petitioner was an idiot or insane, within the meaning of those terms, at the time the marriage ceremony was performed.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Edwin Falloon, S. P. Davidson* and *Roscoe Anderson,* for appellant.

*Reavis & Reavis, contra.*

BARNES, J.

Plaintiff brought this action in the district court for Richardson county to obtain a divorce from her husband, Frank Svanda, Jr., on the ground of nonsupport. The petition was in the usual form. Service of summons was had upon the defendant, and thereupon Frank Svanda, Sr., the father of defendant, procured his own appointment

as his son's guardian, and in that capacity filed an answer to plaintiff's petition, admitting the marriage, denying nonsupport, and alleging, in substance, that at the time the marriage ceremony was performed the defendant was mentally incompetent to enter into the marriage contract, that the marriage was void, and prayed that plaintiff be denied a divorce, and that defendant have a decree annulling the marriage, and for costs. The reply was, in substance, a general denial. Upon a trial of the issues thus joined, plaintiff had the findings and judgment, and the defendant has appealed.

As we view the record, plaintiff clearly established her allegation of nonsupport. In fact, it is not claimed by the defendant that at any time since about one month after the marriage he has contributed anything to the support of his wife, although he is possessed of some property, and was able, by his labor on the farm, to furnish her with proper food and clothing.

Defendant, to maintain the issue of mental incapacity, produced the evidence of three physicians, who claim to have examined him upon the eve of the trial. They testified, in substance, that at the time they examined him he was mentally incompetent to contract marriage. It must be observed, however, that the physicians had never examined the defendant at any other time, and knew nothing about his mental condition either before or at the time when the marriage ceremony was performed.

A witness was also produced who stated that, when defendant was about 17 years of age, he attended his school. He testified that defendant was dull, and made little or no progress in his school work. Other witnesses testified that defendant, when a boy, was backward and retiring in his disposition, and preferred the company of neighbor boys rather than the society of girls; that at times, when company or strangers came to the home, he kept out of sight, to some extent, at least. Two other witnesses testified that they were of opinion that defendant was not competent to make contracts. But it should

be observed that each of those witnesses had contracted with him in the way of purchase and sale of property. In fact, it may be said that defendant was not possessed of any great degree of mental power; but the testimony of his own witnesses shows that he was able to carry on the ordinary business of farming; that he rented 80 acres of land from his father for several years, which he successfully farmed on his own account; that he had a team of his own, as well as other personal property.

It is claimed, however, that defendant did not ask the plaintiff to marry him, and this fact is urged as evidence of his mental incapacity. It appears, however, that the plaintiff was employed as a domestic at the home of defendant's father and mother; that after she had been there something over a month the father and mother told her that, if she and Frank (meaning the defendant) would get married, they would give them 160 acres of land; that after talking the matter over plaintiff and defendant agreed to the proposition; that defendant's father purchased him a suit of clothes and furnished him with money with which to pay the expenses of the marriage, and thereupon defendant and plaintiff went over to the home of plaintiff's parents; that the following day, March 12, 1907, they went with her father to Pawnee City, where they were married by a justice of the peace; that they returned to the home of plaintiff's father, where they remained that night, and the next day they went to the Svanda home, where they lived as husband and wife for about a month, when, by reason of the conduct of defendant's father towards the plaintiff, the defendant took her to her father's home, promising to visit her every other day, and told her that as soon as he had his corn planted he would come for her and they would make a home for themselves; that some days after defendant left her father's house he returned and informed her that he would have nothing more to do with her, and from that time to the day of the trial defendant failed and refused to live with plaintiff or furnish her any means of support whatsoever.

The burden of proof in this case was on the defendant
to show such mental incapacity on his part as would ren-
der his marriage with the plaintiff void. On that ques-
tion it was said in *Elzcy v. Elzcy*, 1 Houst. (Del.) 308:
"Imbecility of mind is not a sufficient ground of divorce,
unless it amounts to idiocy or insanity. Nor will intoxi-
cation at the time of the marriage, accompanied with cir-
cumstances of fraud, combination, or circumvention on
the part of the father and friends of the wife, to induce
the petitioner to marry his daughter, give the court juris-
diction to decree a divorce, unless the petitioner was
*insane,* within the meaning of the act." In that case it
was further said: "It would be dangerous, perhaps, as
well as difficult, to prescribe the precise degree of mental
vigor, soundness and capacity essential to the validity of
such an engagement; which, after all, in many cases de-
pends more on sentiments of mutual esteem, attachment,
and affection, which the weakest may feel as well as the
strongest intellects, than on the exercise of a clear, un-
clouded reason, or sound judgment, or intelligent discern-
ment and discrimination, and in which it differs in a
very important respect from all other civil contracts."

It must be observed that it was neither alleged nor
proved that defendant was insane or an idiot when the
marriage ceremony was performed, and there is much
competent evidence in the record which tends to show that
defendant had sufficient mental capacity to enter into the
marriage contract at the time the ceremony was per-
formed; and, although the testimony is conflicting, in view
of the rule above stated, we are of opinion that the find-
ings of the district court are amply sustained by the evi-
dence.

It appears that the decree of the district court gave the
plaintiff $400 as permanent alimony, and $100 as attor-
ney's fees. We assume that the trial court took into con-
sideration the fact that in another action, tried in that
court, plaintiff had on appeal recovered jointly with de-
fendant an interest in 120 acres of valuable land, and

therefore the court allowed her only $500 as the amount of her permanent alimony and attorney's fees.

As we view the record, the judgment of the district court was right, and it is therefore

. AFFIRMED.

REESE, C. J., ROSE and FAWCETT, JJ., concur.

LETTON, SEDGWICK and HAMER, JJ., not sitting.