EDWIN B. FISCHER, NEXT FRIEND OF GOTTHARDT S. FISCHER, APPELLANT, v. BEULAH ADAMS, APPELLEE.

38 N. W. 2d 337

Filed June 29, 1949. No. 32632.

Reller, McArthur & Davis, and Thomas H. Adams, for appellant.

*Frederick J. Patz* and *Ralph H. Gillan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action commenced by Edwin B. Fischer, as the next friend of Gotthardt S. Fischer, to annul a marriage between the latter and the defendant, Beulah Adams. The trial court found for the defendant and the plaintiff appeals.

It is the contention of Edwin B. Fischer in his capacity as next friend to his father, Gotthardt S. Fischer, that his father was insane at the time the marriage contract was made and that he was therefore mentally incapable of assenting to the marriage. Allegations that the marriage contract was the result of fraud and undue influence are also contained in the petition.

The evidence shows that Fischer was more than 80 years of age. He had lived at Kenesaw for many years where he had operated a blacksmith shop. He had accumulated property worth approximately $17,000. He had three children, Dr. George Fischer, Edwin B. Fischer, and Alma Groff. The record shows that Fischer, during the period he lived in Kenesaw, had served on the school board, the village board, and in other civic capacities. The record shows that the family had always gotten along well together, a situation which still continues except for the occurrences stated herein.

In 1938 Fischer's wife passed away. From that time forward his condition began to change. Evidences of senile dementia manifested themselves. He became very eccentric and somewhat quarrelsome. He insisted on living in the squalid quarters of his blacksmith shop. He became dirty and slovenly in his habits and appearance. He would stay with his children for short periods only, although the record shows they did all they could to make him comfortable and contented. He became progressively more feeble and reached the point

where. he could no longer control his bodily functions. He was easily confused, could not remember the names of members of his own family and could not travel from one place to another unattended. He developed a propensity to build small benches which were of no value to anyone. This was his general condition in January 1948, when he suffered a stroke which partially paralyzed him. The son Edwin B. Fischer placed him in a Lincoln hospital in the care of a competent physician. He was found to be suffering from cerebral hemorrhage, diabetes mellitus, and a decompensating heart. That he was wholly incompetent during his stay in the hospital is established by the record.

In February 1948, Fischer began to show signs of improvement and on the recommendation of his attending physician he was removed from the hospital to a private home where nursing facilities were available. The defendant, Beulah Adams, aged 55, was employed by the family to care for Fischer, and he was removed to her home in an ambulance. The record shows that Fischer continued to improve under the care of Mrs. Adams. He was soon able to get up and around. He was contented and made improvement in his mental condition. On June 6, 1948, Fischer and Mrs. Adams were married at Papillion, Nebraska, without the knowledge of Fischer's family.

The evidence shows that Fischer was able to testify concerning the marriage ceremony and the events immediately following. There was evidence by laymen of acts by Fischer from which they gave an opinion that he was insane. Dr. George Fischer, son of Gotthardt Fischer and a qualified medical expert, gave his opinion that his father was insane on the day of the marriage. The defendant produced Dr. Robert J. Stein, a physician specializing in psychiatry, who examined Fischer before and after the marriage was entered into. He found no evidence of delusions or hallucinations. It

was his opinion, after a consideration of the facts submitted and the tests he himself made, that Fischer was sane at the time the marriage agreement was made.

It is the general rule in this state that a marriage contract will not be voided on the grounds of mental incapacity unless there existed at the time of the marriage such a want of understanding as to render the party incapable of assenting to the contract. Whatever may have been the mental condition at other times, the condition at the time of the marriage itself must govern the question of capacity. If the afflicted person is cognizant of the nature and obligations of the marriage contract, a decree avoiding the contract is not authorized.

In Aldrich v. Steen, 71 Neb. 33, 98 N. W. 445, we said: "Thus this state seems clearly to have adopted the prevailing rule that, while absolute inability to contract, insanity or idiocy, will avoid a marriage, mere weakness will not, unless it extend so far as to produce the derangement that avoids all contracts, by doing away with the power to consent."

In Svanda v. Svanda, 93 Neb. 404, 140 N. W. 777, 47 L. R. A. N. S. 666, we said: " 'Imbecility of mind is not a sufficient ground of divorce, unless it amounts to idiocy or insanity. * * *.' " See, also, Adams v. Scott, 93 Neb. 537, 141 N. W. 148.

Every variation from a normal mental condition is not sufficient to avoid a marriage contract. The mental derangement relied upon must have a direct bearing upon the contract. If the party has sufficient capacity to understand the nature of the contract and the obligations and responsibilities it creates, the marriage is valid. Mere weakness or imbecility of mind is not sufficient, nor eccentricity or partial dementia, but it must be such a derangement as prevents the party from comprehending the nature of the contract and from giving to it his free and intelligent consent in order to warrant a decree nullifying the purported marriage. See Elfont v. Elfont, 161 Md. 458, 157 A. 741.

The evidence in the present case is in irreconcilable conflict. In such a situation this court has said: "By statute, on the consideration of this case, it being in equity, it became the duty of this court to retry the issues of fact upon the evidence contained in the bill of exceptions and upon trial de novo of such questions of fact, to reach an independent conclusion as to what findings are required upon the pleadings and all the evidence, without reference to the conclusion reached in the district court. Comp. St. 1929, sec. 20-1925. In such cases when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." Nitzel and Co. v. Nelson, 144 Neb. 662, 14 N. W. 2d 197. See, also, Dier v. Dier, 141 Neb. 685, 4 N. W. 2d 731.

In the present case the trial court heard the evidence, expert and otherwise. It also heard the evidence of Gotthardt Fischer, the person alleged to be insane. The evidence being in irreconcilable conflict, we will consider the weight accorded it by the trial court because of the more advantageous position occupied by it in determining the weight to be given thereto. Giving effect to this rule, we find that Gotthardt Fischer was sane on June 6, 1948, the date the marriage contract was made.

The record will not sustain a finding of fraud or duress in the procurement of the marriage contract. There is some evidence that Fischer was deprived of his mail by the defendant and that she concealed their approaching marriage from his children. There is some evidence that she attempted unsuccessfully to obtain control of his property after her marriage to Fischer, which was thwarted by the action of the children and the appointment of a guardian. A decree appointing a guardian for an incompetent person is not necessarily inconsistent

with a finding that such person is sane. The issues are not the same, although insanity constitutes an adequate ground for the appointment of a guardian. These matters are not sufficient, however, to void a marriage contract for fraud or undue influence.

Plaintiff assigns as error the rulings of the trial court in limiting the cross-examination of the defendant to matters testified to by her on direct. The extent of the cross-examination of a witness on matters outside of those testified to on direct is largely discretionary with the trial court. No prejudice being shown, we cannot say that the trial court abused its discretion.

Complaint is made of the refusal of the trial court to permit Gotthardt Fischer to talk with his family during the progress of the trial. We do not see how this could bear upon the mental capacity of Fischer on June 6, 1948, and consequently no error prejudicial to the rights of plaintiff resulted therefrom.

AFFIRMED.