MARY F. MURPHY, APPELLEE AND CROSS-APPELLANT, V. ANDREW MURPHY, APPELLANT AND CROSS-APPELLEE.

121 N. W. 2d 404

Filed April 19, 1963. No. 35340.

240

Floersch & Floersch, for appellant.

Joseph T. Votava, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

Plaintiff commenced this suit to obtain a divorce from bed and board on the ground of nonsupport in that defendant refused to provide suitable maintenance, although he had the financial ability to do so. The defendant denied the allegations of the petition and filed a cross-petition for a divorce on the ground of extreme cruelty. The trial court denied a divorce to the defendant and granted the prayer of plaintiff's petition. Separate maintenance in the amount of $135 per month was granted to the plaintiff. The defendant appealed, and plaintiff has cross-appealed, asserting the insufficiency of the award of $135 per month.

The plaintiff was a childless widow when she married the defendant on March 31, 1959. She was 59 years of age at time of trial on May 29, 1962. The defendant was a childless widower, 75 years of age at the time of trial.

In 1957 plaintiff and her sister, Margaret McGargill, moved to Omaha. At that time plaintiff had an equity of $12,000 in her former home at Imogene, Iowa, household goods worth $2,500, an old Rambler automobile that had been driven 12,000 miles, and $10,000 in cash. The plaintiff and her sister purchased a home in Omaha for $10,000, which they held in joint tenancy, and spent an additional $2,085.04 in remodeling it. Plaintiff and her sister occupied the first floor of the house and the second floor was converted into a furnished apartment,

which they rented for $80 per month. Since December 1, 1957, when the sisters commenced living together, they kept an accurate account of all their living costs and other expenditures. The sister was not in good health, and her contributions to their living expenses consisted of her earnings as a baby sitter. The plaintiff worked at odd jobs from time to time. In December 1958, plaintiff worked a couple of days at St. Vincent's Old Peoples Home, where she met the defendant.

The defendant is a retired mail carrier. He drew retirement pay in the amount of $195 per month. After his marriage to the plaintiff he drew a veteran's pension of $78.75 per month. He had an equity in a contract of sale of his former home in the amount of $8,466.63. He had cash in banks and bonds in the amount of $18,707.62. His total assets in addition to his retirement and pension rights were $27,174.25. At the time he first met the plaintiff he was living at St. Vincent's Old Peoples Home, where he was paying $130 per month for his care and comfort.

The parties, before their marriage, discussed some of the financial problems involved. Plaintiff informed defendant of her relationship with her sister. He was informed that the second floor of the home was rented as a furnished apartment. Defendant suggested that plaintiff discontinue renting the upstairs, so that they could use it after their marriage. This was done, causing plaintiff and her sister to lose the $80 per month, which they had used as part payment on their living expenses. It was understood that the home owned and occupied by the two sisters would become the home of the parties after their marriage. Defendant advised plaintiff of his retirement and pension income and, according to plaintiff's testimony, stated that if it was not enough there was other money available. Defendant said that he agreed to contribute only $130 per month to the family expense. For the first 9 months he contributed only $130 per month which necessitated plain-

tiff, partly because of her loss of the apartment rentals, to expend her own personal savings for living expenses.

The difficulties between the parties stemmed from the refusal of defendant to make larger payments on the $300 per month required to maintain the home. The defendant did make larger contributions to the living expenses for several months before they separated.

In January 1961, plaintiff moved downstairs and lived with her sister, evidently to coerce defendant into making larger contributions to the living costs of the three occupants of the home. Such coersive measures proved ineffective when applied to this 74-year-old defendant. On May 10, 1961, defendant moved out and returned to St. Vincent's Old Peoples Home, where he now resides at an expense to him of $145 per month.

The defendant admits the plaintiff was a fine housekeeper and cook. She took him where he wanted to go in her automobile. He concedes that he was well treated. Plaintiff and her sister painted the house and did the lawn work. The defendant stated that he was of the executive type and did not come there as a handy man. Defendant contends that plaintiff nagged him for security, which she denies. It is plain, however, that the difficulty between the parties arose over the payment of living expenses, the defendant contending he was to pay $130 per month and plaintiff and her sister the balance, although their income had been substantially reduced by the loss of the apartment rentals.

The defendant contends that the trial court should have granted him an absolute divorce on the ground of cruelty. The evidence on which he relies is that plaintiff's efforts to get him to pay more money for her support constituted "nagging." Under all the circumstances and evidence shown in this record, we do not think there was sufficient evidence of cruelty to sustain a decree of divorce. In any event, there is no corroboration, a necessary element to the granting of a divorce.

We think the evidence was sufficient to sustain a de-

cree of divorce from bed and board in favor of the plaintiff on the ground of nonsupport. Regardless of the difficulties of these parties over financial matters during the time they lived together, the fact remains that defendant left the home on May 10, 1961. Thereafter, he paid nothing toward plaintiff's support except when ordered by the court to do so during the pendency of this proceeding. He owed the obligation of a husband to support his wife on and after that date. He failed to do so. This constitutes nonsupport and affords adequate basis for the granting of a divorce from bed and board. See, § 42-302, R. R. S. 1943; Svanda v. Svanda, 93 Neb. 404, 140 N. W. 777, 47 L. R. A. N. S. 666. Whether or not a divorce from bed and board is granted, plaintiff is entitled to an award for support. In section 42-337, R. R. S. 1943, it is said: "In case of an application for a divorce from bed and board, although a decree for such divorce be not made, the court may make such order or decree for the support and maintenance of the wife and children, or any of them, by the husband, or out of his property, as the nature of the case may render suitable and proper."

Even if a wife should fail in making proof for a divorce from bed and board, a husband is not thereby released from his obligation to support his wife. In Earle v. Earle, 27 Neb. 277, 43 N. W. 118, 20 Am. S. R. 667, this court said: "While the statute books of this and other states amply provide for the granting of divorces in meritorious cases, yet we do not apprehend that it is the purpose of the law to compel a wife, when the aggrieved party, to resort to this proceeding, and thus liberate her husband from all obligations to her, in order that the rights which the law gives her, by reason of her marital relations with her husband, may be enforced. Such a conclusion would not generally strike the conscience of a court of equity as being entirely equitable."

While an absolute decree of divorce is usually a more preferable solution than the granting of a divorce from bed and board, the latter may not be forced upon a

party who does not desire it. In Shomaker v. Shomaker, 166 Neb. 164, 88 N. W. 2d 221, this court said: "We have also concluded that where a party has prayed for a divorce from bed and board and has adduced sufficient proof duly corroborated in support thereof, and in the same action the other party has prayed for an absolute divorce but has not adduced sufficient proof duly corroborated in support thereof, then the trial court has no discretion in granting the remedy, but must grant the divorce from bed and board as prayed."

Plaintiff complains that the allowance of separate maintenance is insufficient. The evidence indicates that the marriage was primarily one of convenience. Each of the parties retained his own property. Plaintiff has been placed in the same position as before the marriage, including the restoration of the second floor of her home to a rent-producing furnished apartment. The trial court heard the witnesses and concluded that defendant should pay $135 per month to the support of his wife. We find no evidence in the record that would warrant an increase in the amount by this court.

Plaintiff asks for an allowance of attorney's fees for the services of her attorney in this court. We allow $250 to be taxed as costs for this purpose. The costs are taxed to the defendant.

We find the judgment of the district court to be free from error, and the judgment is affirmed.

AFFIRMED.