WILLIAM P. HOMAN, GUARDIAN AND NEXT FRIEND OF EUGENE J. HOMAN, INCOMPETENT, APPELLANT, V. LUCILLE HOMAN, APPELLEE.

147 N. W. 2d 630

Filed January 6, 1967. No. 36399.

Jack L. Spence, for appellant.

Martin A. Cannon, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BOSLAUGH, J.

This is an action to annul a marriage between Eugene J. Homan and Lucille Homan, the defendant. Although the action is brought by a guardian and next friend, Eugene J. Homan will be referred to as the plaintiff. The trial court found that the marriage was valid and dismissed the action. The guardian has appealed.

The petition alleged that the ward was mentally incompetent at the time of the marriage. By statute a marriage is void "when either party is insane or an idiot at the time of marriage, and the term idiot shall include all persons who from whatever cause are mentally incompetent to enter into the marriage relation." § 42-103, R. S. Supp., 1965.

A marriage contract will not be declared void for mental incapacity to enter into it unless there existed at the time of the marriage such a want of understanding as to render the party incapable of assenting thereto. Fischer v. Adams, 151 Neb. 512, 38 N. W. 2d 337. Mere weakness or imbecility of mind is not sufficient to void a contract of marriage unless there be such a mental defect as to prevent the party from comprehending the nature of the contract and from giving his fee and intelligent consent to it.

Absolute inability to contract, insanity, or idiocy will void a marriage, but mere weakness of mind will not unless it produces a derangement sufficient to avoid all contracts by destroying the power to consent. Aldrich v. Steen, 71 Neb. 33, 98 N. W. 445; Adams v. Scott, 93 Neb. 537, 141 N. W. 148. A marriage is valid if the party has sufficient capacity to understand the nature of the contract and the obligations and responsibilities it creates. Fischer v. Adams, *supra;* Kutch v. Kutch, 88 Neb. 114, 129 N. W. 169.

The plaintiff has a history of mental illness and mental deficiency. When he was 5 years old he was ill with scarlet fever and encephalitis which resulted in a permanent impairment of his mental ability. In December 1950, the plaintiff was treated for schizophrenia. Treatment for this condition continued through 1958 but there is no evidence that the plaintiff received any treatment for this condition between 1958 and 1963. The plaintiff attended Immaculate Conception Grade School in Omaha, Nebraska, and completed 3 years of high school. He was then employed as a laborer by Goodwill Industries and later by Armour & Company.

The plaintiff first met the defendant in 1959. They commenced keeping company and approximately 3 months later the plaintiff proposed marriage. The marriage took place about 6 months later on February 27, 1960. The plaintiff was then 29 years of age.

During the courtship the plaintiff made plans to purchase a house and saved a part of his earnings for the downpayment. A property was selected, a mortgage negotiated, and the purchase completed. The parties moved into their first home a week after the ceremony. In March 1962, the parties traded this home for a larger property.

In 1963 the plaintiff was sent home from his employment with instructions to obtain medical treatment. The plaintiff consulted a physician, was referred to a psychiatrist, and was hospitalized.

At the time of the trial the plaintiff was on leave from the hospital. He was living with his parents in Omaha and working part time. The defendant last saw the plaintiff in August 1964. He was placed under guardianship in October 1964. The plaintiff did not attend the trial and, apparently, did not know of the action or the trial.

A marriage is presumed valid, and the burden of proof is upon the party seeking annulment. Adams v. Scott, *supra*. To succeed in this action it was necessary for the guardian to establish that the plaintiff was mentally incompetent on February 27, 1960.

The plaintiff suffers from a mental impairment that is the result of a childhood illness. This condition is permanent and existed at the time of the marriage. The guardian produced the testimony of the psychiatrist who had treated the plaintiff prior to the marriage. This witness testified that the plaintiff had a mental age of approximately 11 years; an intelligence quotient of between 69 and 75; and that the plaintiff would be classified as a high-grade moron. This witness further testified that, in his opinion, the plaintiff would have an inadequate or superficial understanding of the responsibilities of marriage.

The defendant testified at length concerning her acquaintance and relationship with the plaintiff from the time of their first meeting in 1959 until the hospitalization of the plaintiff in 1963. This evidence contradicts that of the guardian and tends to prove that the plaintiff had a sufficient understanding of the marriage relationship and its obligations and responsibilities. During this time the plaintiff was steadily employed as a maintenance and custodial worker, managed his finances, purchased two properties, and had a reasonably normal life. The evidence supports an inference that the marriage would have continued without difficulty if the plaintiff's mental illness had not recurred in 1963.

Although the plaintiff suffered from schizophrenia

prior to the marriage and again in 1963, the evidence shows that this illness was in remission at the time of the marriage and was not a disabling factor at that time. Although handicapped mentally, the plaintiff had sufficient ability to transact business and the capacity to enter into the marriage on February 27, 1960.

The marriage in this case may have been unwise or unfortunate, but it was not void. The judgment of the district court is correct and it is affirmed.

AFFIRMED.