NITZEL AND COMPANY, APPELLANT, v. WARREN NELSON ET AL., APPELLEES.

14 N. W. 2d 197

FILED APRIL 28, 1944. No. 31632.

*Harry Grimminger,* for appellant.

*Evans & Lee, contra.*

*J. Jay Marx, amicus curiæ.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action in equity by plaintiff and appellant in five causes of action against Warren Nelson, Lyndell T. Nelson and Fred Shafer, defendants and appellees, to foreclose five chattel mortgages and one conditional sales contract given to secure the payment of five promissory notes, on account of delinquency in payment of the notes, and for the appointment of a receiver.

The first cause of action is for the foreclosure of a chattel mortgage securing a note for $1,508.18 bearing date of September 23, 1941, with interest at the rate of 9 per cent per annum, signed by Warren Nelson and Lyndell T. Nelson; the second is for the foreclosure of a chattel mortgage

securing a note for $816 bearing date of September 23, 1941, with interest at 9 per cent per annum, signed by Warren Nelson and Lyndell T. Nelson; the third is for the foreclosure of two chattel mortgages securing a note for $1,184 bearing date of August 19, 1941, with interest at 9 per cent per annum, signed by Warren Nelson and Lyndell T. Nelson; the fourth is for the foreclosure of a conditional sales contract securing a note for $1,706.65 bearing date of October 4, 1941, with interest at 9 per cent per annum, signed by Warren Nelson; and the fifth is for the foreclosure of a mortgage securing a note for $140.40 bearing date of August 18, 1941, with interest at 9 per cent per annum, signed by Warren Nelson.

To the petition setting forth the five causes of action defendants answered denying generally the allegations of the petition and charging, among other things, that the notes were usurious under the small loan law of the state of Nebraska and that by reason thereof plaintiff is barred of a recovery on each and all of said notes, but for the purpose of settling all claims offered to pay the amount claimed to be due on the fifth cause of action.

By reply plaintiff denied that the notes were usurious.

The action was tried to the court. Foreclosure of the fifth cause of action was decreed. As to the other four the court found that the notes were usurious under the small loan laws of the state and that they were therefore unenforceable and in accordance with that finding decree was entered against the plaintiff. From this decree plaintiff has appealed.

There are other issues presented by the pleadings but the only one requiring consideration on this review is that of whether or not the transactions involved are tainted with usury in violation of the statutes of the state since from an examination of the record it becomes clear that according to their tenor the notes were in default and plaintiff was entitled to foreclosure of the chattel mortgages and the conditional sales contract.

The instruments in question taken separately do not have

on their face the appearance of usury, hence the burden of so showing rests upon the defendants in this respect. 66 C. J. 305, sec. 299.

The particular sections of the statute which defendants contend that plaintiff has violated, the burden of which rests upon them to prove, are the following:

"Any licensee hereunder may contract for, collect, or receive interest or charges, upon any loan, which loan may be repayable in installments as may be agreed upon between the parties, not in excess of the following: (a) Interest at the rate of nine per cent per annum, computed on unpaid balances of the loan: Provided, such interest shall not be paid, deducted, or received in advance. (b) A service charge of one-tenth of the amount under one thousand dollars received and retained by the borrower, but no brokerage or service charge shall be made on any such amount in excess of one thousand dollars and such service charge shall not be paid, received or deducted in advance, but may be made payable in installments, computed on an actuarial basis together with the regular payments on the loan, and which service charge shall be deemed to have been earned in full at the expiration of twelve months from the date of such loan, and which shall be returned or credited to the borrower on an actuarial basis if the loan is paid or renewed within said twelve month period: Provided, a service charge shall not be contracted for, charged, collected or received more than once in any twelve month period on any renewal, extension or transfer of any loan unless the service charge of said loan which is being renewed, extended or transferred, is payable in installments computed on an actuarial basis during the period of the loan and the charge for any unexpired period is credited to the borrower; and provided further, that where loans are made for a period of less than twelve months, the service charge shall not exceed that part of ten per cent which the period of the loan bears to twelve months. In the event that a loan is made for a longer period than twelve months, an additional service charge may be made at the end of twelve months on the

unpaid balance, in the same manner and at the same rate as though a new loan was being made." Comp. St. Supp. 1941, sec. 45-143.

"It shall not be lawful for any lender to divide or split up applications for loans or to divide or split up loans under any pretext whatsoever, so as to require or exact any other or greater charges than prescribed herein. A licensee hereunder shall not be entitled to any charge whatsoever unless a loan is actually made. If interest or charges for any loan in excess of the amount of interest or charges hereinbefore prescribed shall be contracted for, collected or received by any licensee, the said licensee shall thereupon lose all of his right to collect or receive any sum whatsoever on said indebtedness." Comp. St. Supp. 1941, sec. 45-144.

It will be noted that the first section quoted provides that the maximum rate of interest shall be nine per cent per annum, computed on unpaid balances of the loan, with a provision that such interest shall not be paid, deducted or received in advance. The section also provides that a service charge or brokerage fee of ten per cent may be made on any amount less than one thousand dollars but that no such charge or fee shall be made on any excess over one thousand dollars, also that such charge or fee shall not be paid, received or deducted in advance, but may be made payable in installments computed on an actuarial basis together with the regular payments of the loan.

The next quoted section, it will be noted, makes it unlawful for the lender to divide or split up loans so as to require or exact any other or greater charges than those prescribed in the first quoted section. It also provides for the forfeiture of the right to collect in case of violation.

The principal contention of defendants is that the first four causes of action represent a single transaction in excess of one thousand dollars split up in such manner as to permit the plaintiff to exact service charges or brokerage fees in excess of one hundred dollars, the maximum allowed by the statute.

That this was but a single transaction in essence is be-

yond serious question. The three defendants so testify as well as J. H. Nitzel, president and manager of the plaintiff corporation. In his testimony with regard to this matter Nitzel pointed out that all of the amounts represented by the four notes with proper and legal charges were in the first instance included in a single note. In this connection his testimony was in part the following: (B. of E. 424, Q. 2226) "Q. Mr. Nitzel, it has been testified here by Mr. Nelson that Mr. Shafer was going to sign this note, and it was later testified that he was going to sign it only in the amount of $1184 guaranteed payment. What are the facts relative to whether Mr. Nelson advised you that Mr. Shafer was going to sign this note, and if he was, in what amount. That is the amount covering the first four causes of action. A. Well, to begin with, that was the understanding Mr. Nelson had given me,—was that Mr. Shafer was going to sign the note for the entire amount. That's how come I made the first note up for the four causes of action."

In the light of this statement we deem it unnecessary to refer to or discuss the other evidence supporting the contention that this was a single transaction split up into four promissory notes.

The splitting of the transaction is of no importance in itself since the statute does not condemn splitting loans but only splitting for the purpose of exacting greater charges than those prescribed. Comp. St. Supp. 1941, sec. 45-144.

It becomes necessary then to ascertain whether or not the defendants have sustained their burden of showing that the plaintiff has made greater exaction in interest charges, or service charges or brokerage fees, or both, than the statute permits.

Taking the causes of action in their order we find that the first note is for $1,508.18 with interest on unpaid balances at the rate of 9 per cent per annum. It is an installment note payable over a period of 18 months in monthly installments. According to the terms of the note no service charge is exacted. Defendants contend that notwithstanding the terms of the note there is included a hidden service

charge in excess of that allowed by law. They claim that the plaintiff's evidence in this case shows that in the note is in fact what amounts to a service charge in the amount of $330.43. This claim is supported by exhibit No. 12 which is the record of this transaction as entered on the books of the plaintiff, which carries this amount as a service charge. The defendants by analysis of the evidence and computation attempt to break it down into two separate items, namely $133.72 as 5 per cent commission on sale of equipment, and $196.71 service charge. This latter item is the equivalent of 15 per cent of all items included in the transaction except the commission charge.

The only explanation of this given by J. H. Nitzel, who handled the entire transaction, as gleaned from his testimony, is that when he made out the note covering the matter as a single transaction, which note did not become effective, he added all amounts together, added $100 as a service charge and made out the note for that amount, and when that deal did not go through four notes were drawn up for a like amount. He has not disclosed into what note or notes the $100 service charge was absorbed. In fact in his testimony, outside the exhibits introduced in evidence, he has wholly failed to break down or even attempt to break down the items going into this note or the note which is the basis of the fourth cause of action which will be discussed herewith. The only attempt on his behalf is made by his counsel in the brief, which attempt is without evidentiary basis or background.

For such further light as is obtainable it is necessary to resort to the contents of exhibits, the testimony of defendants and arithmetical computations.

In the first place this hidden service charge of $100 made a part of the loan on which is being charged 9 per cent interest is in violation of the statute which has been quoted herein. This in and of itself would be sufficient, since this is a single transaction, upon which to declare a forfeiture of the right of plaintiff to recover on any of these notes.

This court said in *Mack Investment Co. v. Dominy*, 140

Neb. 709, 1 N. W. 2d 295: "The legislature has the power to regulate interest, and legislation like that under consideration (the small loan act) is within the police power of the state." See, also, *Althaus v. State*, 99 Neb. 465, 156 N. W. 1038; *Griffith v. State of Connecticut*, 218 U. S. 563, 31 S. Ct. 132. Further in the same opinion, speaking to the effect of an excess charge made on a loan by a small loan licensee under a provision of the then statute which was in all substantial particulars the same as section 45-144, Comp. St. Supp. 1941, it was stated: "The action is based upon an illegal contract, * * * , and the plaintiff, as licensee, loses all right, under section 45-119, Comp. St. 1929, to collect any sum whatever on this indebtedness. The letter of the statute admits of no other interpretation by any construction."

In the second place, on defendants' analysis no reasonable conclusion can be arrived at other than that a service charge or service charges were made in excess of those permitted by statute.

Independent of the analysis and computation by defendants we have made one of our own which considers the first and fourth causes of action together as one transaction. Thus the first note, according to the books of plaintiff, embraces the sale of equipment in the amount of $587.50, insurance on equipment $62.50, loan $420, life insurance $107.75 and service charge, "18 mo. payt. service" $330.43, making a total of $1,508.18. The fourth embraces the sale of equipment in the amount of $1,971.50, less $420 called a down payment. This item appears to be a charge in the first and a credit in the fourth. To the balance of $1,551.50 for merchandise, $155.15, or 10 per cent, was added as a service charge, making the total of the face of the note $1,-706.65. From all of this we have attempted to find out if there was any basis upon which to harmonize the testimony of Nitzel with these entries on the books of the plaintiff. We have found none.

It will be noted that as to the two causes of action the total of service charges is $485.58. In this, Nitzel says is a 5 per cent commission on sale of equipment. This com-

mission would amount to $127.95 leaving a balance charged in some other manner of $357.63.

One explanation as to a part of this amount appears to be that there is a loan service charge of $100 which, as has already been pointed out, would be illegal since it was included in the loan with interest charged thereon. Another is that it was in part accounted for by a "mark up" on the purchase price of equipment on account of credit extended. This contention finds no support since from the record it is clear that the "mark up" claimed and complained of by defendants was included in the recognized sale price of the equipment. If defendants were allowed credit against this amount for the illegal service charge of $100 there would still be $257.63, or slightly more than 10 per cent of the purchase price of the equipment, unaccounted for. If this credit be not allowed then there would be the entire amount of $357.63, or a little less than 14 per cent of the equipment purchase price.

Considering the first cause of action separately on the basis of the computation made by defendants, and on the theory most favorable to plaintiff there is a service charge of 15 per cent on the items going into the note. To do this, however, would be to allow plaintiff a 5 per cent commission on all equipment included in the notes which are the basis of the first and fourth causes of action. Considering the fourth on defendants' computation and the records of plaintiff it becomes necessary to find that there was a service charge of 10 per cent on the equipment sold for which payment was not received, or $155.15.

It cannot be said with any degree of accuracy or certainty that either of the analyses or computations is reflective of the transaction being examined in this action but either or both or the records of plaintiff show unmistakably a usurious transaction and a patent violation of the small loan laws of this state. On plaintiff's part there was not even the slightest evidentiary analysis from which an opposing conclusion could be predicated.

It may be well to note here another thing which weakens

further the contention of plaintiff that these charges are not service charges made by plaintiff. The fact is, as disclosed by the record, that Nelson bought no equipment from the plaintiff company. This merchandising transaction was with J. H. Nitzel as an individual. Why then would the items be set up on the books of the plaintiff as a service charge after computation of the total of the other items going into the notes? Is it not reasonable to infer from this method of making the entries that the charge was made by the plaintiff company rather than by Nitzel? If it was a charge made by the company it could not be anything other than a service charge on the loan transaction.

The duty of the court in the premises is clear and distinct.

Complaint is made that the note which is the basis of the second cause of action, considered as a separate transaction, is usurious and violative of the statutes quoted.

Without referring to it specifically it will be stated here that the evidence in this respect is so uncertain that if this cause of action were being considered as a separate transaction we could not say that the defendants had sustained the burden of showing by a preponderance of the evidence that the note was illegal as claimed.

What has been said with reference to the evidence supporting the contention of defendants in relation to the second cause of action may be said with like effect as to the third cause of action as a separate transaction.

In view of the fact that the fourth cause of action was discussed, considered and disposed of along with the first no separate discussion is here required.

By statute, on the consideration of this case, it being in equity, it became the duty of this court to retry the issues of fact upon the evidence contained in the bill of exceptions and upon trial *de novo* of such questions of fact, to reach an independent conclusion as to what findings are required upon the pleadings and all the evidence, without reference to the conclusion reached in the district court. Comp. St. 1929, sec. 20-1925. In such cases when the evidence on

material questions of fact is in irreconcilable conflict, this court will, in determining the weight of evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. *Dier v. Dier,* 141 Neb. 685, 4 N. W. 2d 731.

From an examination of the record in this case we have arrived at the independent conclusion that the matters involved in the four causes of action discussed were but a single transaction split into four parts; that by reason thereof the notes carry within themselves an exaction of interest in excess of that permitted by law; that service charges are included in said notes illegally and in excess of amounts which may be exacted, all of which have the effect of rendering the said notes void and uncollectible.

We assume and have considered that the finding of the trial court depended in part upon the observation of the witnesses and their manner of testifying. We have taken this into consideration in reaching the conclusions arrived at here but we do not hesitate to say that independent of this no other conclusion could have been reached.

Other grounds for reversal have been assigned but they do not require discussion in the light of the finding on the matters discussed herein. Likewise there were other grounds upon which defendants urged in the district court and are urging here that this was an illegal and unenforceable transaction under the small loan law which, while we do not hold that they lack merit, we do not consider require determination in the light of the findings made on the questions discussed.

The decree of the district court is affirmed.

AFFIRMED.