STATE SECURITIES COMPANY, A CORPORATION, ET AL., PLAINTIFFS, v. HENRY LEY, DIRECTOR OF THE DEPARTMENT OF BANKING OF THE STATE OF NEBRASKA, ET AL., DEFENDANTS.

128 N. W. 2d 766

Filed June 5, 1964.   No. 35764.

Ginsburg, Rosenberg, Ginsburg & Krivosha, for plaintiffs.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for defendants.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action for a declaratory judgment to determine the question of the constitutionality of Legislative Bill 11, hereinafter referred to as L. B. 11, enacted by the Seventy-fourth (Extraordinary) Session of the Legislature of Nebraska, 1963. This is an original action commenced in this court. The basis of the jurisdiction of this court is provided for by Article V, section 2, of the Constitution of the State of Nebraska.

By proclamation dated October 14, 1963, the Governor of the State of Nebraska called the Legislature of the state to convene in extraordinary session on October 21, 1963. Article IV, section 8, of the Constitution of Nebraska, provides for the Governor to make such a call. The Governor's call was sufficient, together with the resolution adopted by the Legislature, to bring before this court an original action to determine the constitutionality of L. B. 11.

In such special session, the Legislature enacted L. B. 11, now set forth as Chapter 7, Session Laws, Seventy-fourth (Extraordinary) Session, 1963, page 87. By section 14 of this act it is provided that "this act shall become operative on December 16, 1963." The act was passed with the emergency clause.

The plaintiffs' petition alleged in substance that the plaintiffs were industrial loan and investment companies, incorporated under the laws of the State of Nebraska to conduct business as industrial loan and investment companies pursuant to the provisions of sections 8-401 to 8-417, R. R. S. 1943, and were licensed by the State of Nebraska to conduct such business; that for many years prior to November 1963, each of the plaintiffs was duly and lawfully carrying on its business in the city of Lincoln, Lancaster County, Nebraska, pursuant to such license provided for by law; and that at all times since 1943 the plaintiffs had carried on such business and engaged in the business of making installment loans under and in pursuance of, and as required by the provisions of sections 8-418 to 8-433, R. R. S. 1943. The petition further alleged that the defendant Department of Banking is the administrative department of the State charged and vested with the duty of regulating the business of the plaintiffs, the licensing of the same, and the supervision of the making of installment loans by the plaintiffs under and pursuant to the provisions of sections 8-418 to 8-433, R. R. S. 1943; that the defendant, Henry Ley, is the Director of the Department of Banking of the State and is charged with the administration and enforcement of all of the laws of this State relating to industrial loan and investment companies and the making of installment loans thereby, and represents the State in all matters connected with the transaction of business of such companies; that pursuant to the provisions of sections 8-418 to 8-433, R. R. S. 1943, the plaintiffs, prior to December 16, 1963, were required to make installment loans in accordance with the provisions of such statutes, and as such, have been exempted from the operation of the installment loan laws of this State, being sections 45-114 to 45-158, R. R. S. 1943; and that pursuant to the provisions of sections 45-101 and 45-102, R. R. S. 1943, the plaintiffs were authorized to make loans upon the rate of interest and

terms as provided by sections 8-418 to 8-433, R. R. S. 1943, without regard to the limitations imposed upon the licensees under the provisions of sections 45-114 to 45-158, R. R. S. 1943.

The petition then makes reference to the approval of L. B. 11 by the Governor, which became operative on December 16, 1963, and alleged that by section 16 of L. B. 11 there was provided a purported repeal of sections 8-418 to 8-431, R. R. S. 1943, to become effective December 16, 1963; that pursuant to the provisions of L. B. 11, the defendants, on and after December 16, 1963, notified the plaintiffs that the plaintiffs would no longer be permitted to make loans under the provisions of sections 8-418 to 8-433, R. R. S. 1943, that after said date the plaintiffs would not be permitted to make installment loans under the provisions of the purportedly repealed statutes, and that after said date all installment loans must be made in compliance with sections 3, 7, and 8, of L. B. 11; that accordingly, if the plaintiffs desired to continue to engage in the business of making installment loans, all such loans must be made in accordance with the provisions of sections 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 of L. B. 11, and that plaintiffs must apply for a license under the provisions of section 8 of L. B. 11; that the defendants have threatened to, and will, unless restrained by this court, enforce the provisions of L. B. 11 and will impose penalties upon the plaintiffs in the event the plaintiffs should make any installment loans other than in accordance with and as provided for by the provisions of L. B. 11; that the plaintiffs are placed in a hazardous position; that if L. B. 11 is unconstitutional, then every installment loan made by the plaintiffs in pursuance of the provisions of L. B. 11, and as required by the defendants, as above set forth, would be in violation of the provisions of sections 8-418 to 8-431, R. R. S. 1943, which would then be in effect, and which loans would thereupon be subject to the penalties provided by section 8-432, R. R. S. 1943;

and on the other hand, if plaintiffs should continue to make installment loans as required by sections 8-418 to 8-431, R. R. S. 1943, and the purported repeal thereof as contained in L. B. 11 is held to be effective, then all such installment loans made by the plaintiffs subsequent to December 16, 1963, would be subject to the penalties prescribed by L. B. 11; and that until a determination of the validity of the rules of the defendants hereinbefore referred to can be had, plaintiffs would be required to make installment loans in accordance with such rulings, thereby incurring the penalties prescribed by the applicable statutes, particularly the civil and criminal penalties provided by section 8-432, R. R. S. 1943.

The plaintiffs further alleged that L. B. 11 is unconstitutional and void, setting forth several reasons why it is unconstitutional. Later in the opinion we will discuss such contentions of the plaintiffs as will be necessary to determine the constitutionality of L. B. 11.

The defendants' answer admits all allegations of fact contained in the petition, and affirmatively asserts that L. B. 11 is in all respects a valid and constitutional enactment, and is a proper exercise by the Legislature of constitutional authority to legislate with respect to interest rates, installment loans, licenses, and related matters.

The plaintiffs filed a motion for judgment on the pleadings, stating that the ruling on said motion would dispose of all of the issues in this case, for the reason that only issues of law are involved.

The plaintiffs concede that the Legislature is empowered with the right to pass general interest laws, including laws affecting installment loans, and to regulate the subject of interest on the loans. The plaintiffs contend that L. B. 11 is not such an interest law.

The principal contention of the plaintiffs is that L. B. 11 is unconstitutional for the following reasons: It is a special law regulating interest on money and grant-

ing to certain groups special and exclusive privileges, immunities, and franchises in violation of Article I, section 16, and Article III, section 18, of the Constitution of Nebraska; and that L. B. 11 is unfair and discriminatory, and is an arbitrary and unreasonable interference with the plaintiffs' business, and the provisions thereof are unreasonable and unnecessary restrictions upon trade and an abuse of the police power of the State, and amounts to class legislation.

Article III, section 18, of the Constitution of this State, provides in part: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Regulating the interest on money." Under this constitutional provision, the Legislature may fix rates of interest for the hire of money or the forbearance of a debt in installment sales contracts if the classification is reasonable and has relation to the public interest. The provision prohibits the Legislature from passing any act which does not operate equally and uniformly upon all persons in a class. Article I, section 16, Constitution of Nebraska, prohibits the granting to any person any special or exclusive privileges or immunity.

The plaintiffs assert that L. B. 11 is an attempt to fragmentize types of loans and types of lenders, to grant special privileges to some and impose special burdens upon others; and that L. B. 11 is not such an exercise of police power as was considered in Althaus v. State, 99 Neb. 465, 156 N. W. 1038, but rather is an unreasonable and special law inhibited by the Constitution under the rules laid down in Althaus v. State, 94 Neb. 780, 144 N. W. 799.

The plaintiffs cite State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215. In the cited case this court recognized that the Legislature was empowered to differentiate between installment loans and ordinary loans and make regulations applicable to each type. The court said: "In that respect, sections 45-101 to 45-113, R. R. S. 1943, are general statutes which con-

tain the interest and usury provisions relating to all ordinary loans and other specified indebtedness taken yearly or for a shorter period. On the other hand, sections 45-114 to 45-158, R. R. S. 1943, are original, independent, special statutes complete in themselves, which relate solely to installment loans * * *. Their purpose and design is to license and control the business of making such installment loans, * * *."

The plaintiffs assert that in the instant case the Legislature is not dealing with the subject of installment loans as a separate independent subject, but is making special rules applicable to special kinds of installment loans.

The plaintiffs make reference to section 3 of L. B. 11, which provides in part: "Any rate of interest which may be agreed upon, not exceeding nine dollars per year upon one hundred dollars, shall be valid upon any loan or forbearance of money, goods or things in action and may be taken yearly, for any shorter period or in advance, if so expressly agreed; * * *." This, of course, is applicable to all types of loans. Then there is a provision in section 3, of L. B. 11, providing that a rate of interest not exceeding $12 a year upon $100 may be agreed upon on any loan repayable within 84 months in approximately equal or declining periodic installments of 1 month or less, which loans are unsecured, or where the lender takes in return as the only security a chattel mortgage, conditional sales contract, or pledge of chattels of any kind.

It will be noted that as to the 12 percent class of installment loans, security upon real estate is not permitted. Further, it will be noted that for the 12 percent loan, security by a comaker, surety, or guarantor is not permitted. A loan secured by a comaker or a guarantor is a secured loan. Consequently, section 3 of L. B. 11 makes it clear that the 12 percent loan cannot be secured except by certain types of chattel security.

As stated by the plaintiffs in their brief, why there should be any difference between a loan secured by a guarantor or a surety or a comaker and a loan secured by chattel property is impossible to comprehend. A lender who is willing to make an installment loan to a borrower who can only furnish as security a personal surety or guarantor or cosigner cannot obtain 12 percent on the loan and is limited to 9 percent, but one who will make such a loan secured by a chattel mortgage, conditional sale, or a pledge of chattel property can obtain 12 percent. We can see no explanation why there should be a difference between such an installment loan secured by real estate and such an installment loan secured by this particular type of chattel property, or where such loan might be secured by a comaker, cosigner, or a guarantor.

Section 9, of L. B. 11, provides that a lender may make a loan of not to exceed $1,500 at the rate of 30 percent on the first $300, 24 percent on the next $200, and 12 percent on the balance. A lender can take personal security or a comaker as security on a $1,500 loan, but cannot take personal security or a comaker as security on a 12 percent loan.

The case of Althaus v. State, 94 Neb. 780, 144 N. W. 799, is applicable to this action. In that case this court was dealing with Laws 1913, chapter 250, page 778, which was in part an act to regulate the rate of interest which might be charged for the use of money loaned in sums not exceeding $250, and for a period of time not exceeding 1 year where such loans were secured by chattel mortgage, or deposit of personal property, or assignment of wages, credits, or choses in action; and to provide for the licensing of money lenders engaged in the business of making such loans. Section 1 of the act provided in part: "A rate of interest not exceeding one per cent per month may be charged by agreement on loans not exceeding $250.00 made for a period of one year or less, where such loans are secured

only by a chattel mortgage on household goods, musical instruments, wearing apparel, jewelry, diamonds, or by a deposit of personal property, or by an assignment of wages credits, or choses in action." Section 3 of the act provided in part: "No person, firm or corporation shall lend money at a rate exceeding ten per cent per annum until such person, firm or corporation shall have secured a license which shall be issued by the Secretary of the State * * *." This court said: " 'The rule established by the authorities is that, while it is competent for the legislature to classify, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified.' * * * The act by its terms protects from the rapacity of those who loan money on chattel security only owners of the particular items of personal property enumerated. A lender who charges extortionate interest and accepts security on the chattels enumerated by the legislature may be punished. Another lender who makes a loan on identical terms, except that he includes in his chattel mortgage an article not enumerated in the act, but similar to those mentioned therein, goes free. * * * Why should the mortgagor of diamonds be protected by the criminal law from extortionate rates of interest and the mechanic, who mortgages his tools * * * go without protection? * * * In a law regulating the interest on money are the classifications made in the act permitted by the constitution? The answer to these questions is that there is no 'substantial difference of situation or circumstance that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified.' Reasoning or refinement which would harmonize such classifications with the constitution would make of the supreme law, of the act of the legislature and of the judgment of the court a farce or a delusion. If the legislature had not attempted to legalize

a special rate, but had merely added a penalty to that created by the existing statute and had made it applicable to a class reasonably selected, a different question would be presented."

L. B. 11 is an attempt to legalize a special interest rate, which would be a 12 percent interest rate, for the benefit of certain types of lenders only. L. B. 11 attempts to give a special benefit to a special class and deny its benefit to others. While different penalties are provided for in L. B. 11 for violation of such act, we deem it unnecessary to set forth or discuss this matter. We believe that one who violates the usury law should be treated the same as another who violates such law. In considering L. B. 11, it contains every vice pointed out in the above-cited case.

In analyzing L. B. 11, it is an attempt to grant certain classes of lenders the right to take a higher rate of interest than is granted by law to other types of lenders, as heretofore pointed out. The Constitution of this State, by Article III, section 18, condemns a special act relating to interest. L. B. 11, with its asserted classifications, has no rational basis for making the classifications that it does.

This action is identical with the rationale of this court in the case of Stanton v. Mattson, 175 Neb. 767, 123 N. W. 2d 844, wherein this court said: "The Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences in situation and circumstances surrounding the members of the class, relative to the subject of the legislation, which render appropriate its enactment; and to be valid the law must operate uniformly and alike upon every member of the class so designated." The court also said: "Classifications of persons for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. * * * We fail to see any connection between

the fixing of an interest rate and the fact that security for the loan is taken or the title to the property retained. The provision is special and not general. * * *

"We point out that Article III, section 18 of the Constitution, requires that the fixing of interest rates must be uniform as to all members of the class. Provisions excepting persons or property from the classification made are in conflict with the legitimate purposes of the act, to wit, the fixing of an interest rate for installment sales contracts that is equal and uniform as to all within the class. * * * The very purpose of Article III, section 18, of the Constitution, is to prevent legislative action which grants benefits or immunities to persons or property within the general class that is made the subject of legislation."

A case in point with reference to L. B. 11 is Acme Finance Co. v. Huse, 192 Wash. 96, 73 P. 2d 341. While the act involved therein was different than L. B. 11 considered in this case, there does appear certain language that is applicable to the instant case. The court said: "It seems to us that a mere statement of the matter is all that is required to show that the act, * * * is unlawfully discriminatory. The excepted classes are so numerous and varied and cover such a broad field that the act, in fact, does not have the semblance of a general law, but of a special one aimed at a special and limited class. It clearly denies to that class the equal protection of the laws, * * * because, among other things, it permits the classes excepted by § 14, p. 1038, the right to collect service and carrying charges, etc., over and above the lawful twelve per cent interest rate, and provides a criminal penalty for all others who do so. By the same token, it grants to the excepted classes special privileges and immunities in violation of * * * the state constitution.

"There is no warrant for so arbitrary a classification, especially in a criminal statute. The injury done by a usurious loan is the same when the loan is made by a

bank or trust company or a licensed pawnbroker as when made by anyone else."

In the instant case classes are so numerous and varied and cover such a broad field that the act, in fact, does not have the semblance of a general law, but of a special law prohibited by the Constitution of the State of Nebraska.

Section 3, of L. B. 11, fixes the 12 percent interest rate and provides for certain types of security with reference thereto, a chattel mortgage, conditional sales contract, or a pledge of personal property. It is difficult to see how there can be a difference as to a comaker, cosigner, guarantor, or surety, which as heretofore stated, is not provided for with reference to the 12 percent loan in section 3 of L. B. 11. A loan secured by a comaker, guarantor, or cosigner is in the same class as a loan secured by a chattel mortgage, conditional sales contract, or pledge of personal property. It is obvious that L. B. 11 is a special act for the benefit of a special class. It is a special law regulating interest on money.

Other matters raised in the brief of the plaintiffs need not be determined.

We conclude that L. B. 11 is void and unconstitutional because it is a special law in violation of Article III, section 18, of the Constitution of the State of Nebraska, and is not obligatory upon the plaintiffs, and that the defendants, and each of them, be permanently enjoined from enforcing L. B. 11 against the plaintiffs.

JUDGMENT FOR THE PLAINTIFFS.

CARTER, J., concurring.

We are here dealing with a constitutional provision which states: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Regulating the interest on money." Art. III, § 18, Constitution of Nebraska. The effect of this provision, as I see it, is that any charge for the use of money must be uniform and within maximum limits as to all loan transactions upon the class of persons within the scope

of the constitutional inhibition. The class was clearly intended to include any person within the state who loans money and exacts interest for its use.

Classification for the purposes of legislation must, of course, operate uniformly upon persons in the same class to avoid the discriminatory and uniformity provisions of the Constitution. But what may be a proper classification for one purpose might be wholly improper in another. Where the Constitution operates to limit the maximum charge for the use of money without exception, the inhibition requires that legislation must apply to all cases within the state in which a charge for the use of money is involved. The very purpose of the constitutional prohibition was to prevent favoritism in interest rates over and above the general maximum rate, either as to classes of persons or classes of property. Since this is the plain intent of the Constitution, the Legislature may not create lesser classes of persons or property not permitted by the Constitution as a basis for legislation. If such a method were permitted, the restriction upon the Legislature contained in the Constitution would be reduced to a shambles with a meaningless effect.

The Legislature appears to be laboring under the misapprehension that it may legislate on classes of lenders, borrowers, or property with reference to charges for the use of money when such classifications may be general for some purposes, even though contrary to the constitutional classification inherent in the constitutional prohibition. This it cannot do.

This court has made some contribution in the past to such an erroneous assumption. In Althaus v. State, 99 Neb. 465, 156 N. W. 1038, this court held that a statute permitting an additional charge where the class of borrowers were poor, necessitous, and without credit, and the cost of making, servicing, and collecting small loans was great, constituted a general class not within the purview of a special law regulating interest. The theory of

that case appears to be that the constitutional prohibition was against lenders of money, and not against borrowers where it was shown to be for the benefit of the borrower. The holding was upheld by a divided court on very dubious reasoning. The holding was adhered to in State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215; Mack Investment Co. v. Dominy, 140 Neb. 709, 1 N. W. 2d 295; Nitzel & Co. v. Nelson, 144 Neb. 662, 14 N. W. 2d 197. It appears to be the established law of this state.

But we are not here dealing with small loans within the classification approved in the Althaus case. We are dealing with classifications of persons and property where such classifications are not permitted by the inhibitory provision contained in Article III, section 18, of the Constitution, even though they might be adequate general classifications for some legislative purposes.

In addition to the reasons stated by the majority, it is my opinion that L. B. 11 is unconstitutional in that the prohibition of the Constitution against the regulation of interest on money by special law is offended whether or not the loan is secured, and whoever the lender might be, except, of course, when made under the provisions of the Small Loan Act. The constitutional prohibition denies to the Legislature the power to grant maximum rates of interest to some and not to others for the use of money.