IN RE PETITION OF ANONYMOUS 1, A MINOR.
558 N.W.2d 784

Filed January 10, 1997.    No. S-33-960027.

Judith A. Zitek for petitioner.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

## I. INTRODUCTION

This proceeding was instituted under the provisions of Neb. Rev. Stat. § 71-6901 et seq. (Cum. Supp. 1994) by a pregnant 13-year-old minor seeking authorization for her physician to perform upon her an abortion "without prior notification being required or given to her parent(s) . . . ." The judge below entered an order denying such authorization, finding that the petitioner "is not a mature minor and is not capable of giving informed consent to the proposed abortion, and it is not in the best interests of the [p]etitioner for the physician to perform the proposed abortion upon her without prior notification to her parent(s) . . . ." The minor asserts in this court, in essence, that the judge below erred in each of the foregoing findings:

## II. DE NOVO REVIEW

Section 71-6904(6) provides that we hear this appeal de novo on the record. Accordingly, we reappraise the evidence as presented by the record and reach our own independent conclusions with respect to the matters at issue. However, we consider, and may give weight to, the fact that the judge below heard and observed the witnesses. See, *Schuelke v. Wilson*, 250 Neb. 334, 549 N.W.2d 176 (1996); *Gustin v. Scheele*, 250 Neb. 269, 549 N.W.2d 135 (1996); *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995).

The relevant portions of § 71-6902 provide that no "abortion shall be performed upon a pregnant woman until at least forty-eight hours after written notice of the pending abortion has been delivered . . . to the parent . . . ." "Pregnant woman" is defined in pertinent part as "an unemancipated woman under eighteen years of age who is pregnant . . . ." § 71-6901(5). "Parent" means "one parent or guardian of the pregnant woman selected by the

pregnant woman." § 71-6901(3). Furthermore, § 71-6903(1) provides:

> If a pregnant woman elects not to notify her parent, a judge . . . shall, upon petition or motion and after an appropriate hearing, authorize a physician to perform the abortion if the court determines that the pregnant woman is mature and capable of giving informed consent to the proposed abortion. If the court determines that the pregnant woman is not mature or if the pregnant woman does not claim to be mature, the court shall determine whether the performance of an abortion upon her without notification of her parent would be in her best interests and shall authorize a physician to perform the abortion without such notification if the court concludes that the best interests of the pregnant woman would be served thereby.

The evidence demonstrates that the minor herein is a ninth grade high school student who lives with both of her parents. She suspected she was pregnant after she missed her menstrual period, and she later confirmed her suspicion by taking two pregnancy tests, at least one of which was of the type administered at home.

The minor performs household chores and has saved the money she earned this past summer detasseling corn, putting the money in the bank. She is currently unemployed and testified that she earns A's and B's in school. She hopes to go to college and may possibly become a nurse.

She has not discussed sexual matters with her parents and has not told them of her pregnancy. She testified that she feels pretty close to her mother, but she fights "a lot" with her father. She said that on two separate occasions, her father threatened to kick her out of the house if she got pregnant at a young age. She takes these threats seriously and does not believe her father is merely trying to emphasize his concern or feelings about her becoming pregnant. At one point, the minor testified that she does not confide in either of her parents, but later admitted that she sometimes tells them about her feelings.

She has been advised of and has considered her alternatives, including adoption, testifying:

[COURT]: Have you discussed the procedure with any medical person?

[MINOR]: Well, I went to Planned Parenthood and talked to them about it.

[COURT]: All right. Did they discuss any medical risks that are involved?

[MINOR]: No, but I got booklets on it and read about them.

[COURT]: Okay. But Planned Parenthood didn't discuss it with you?

[MINOR]: ([Minor] nods head in the affirmative.)

[COUNSEL]: Your Honor? Did you speak with Sherry Ham?

[MINOR]: Yeah.

[COUNSEL]: Didn't she go through the procedure you are going to have and tell you what — the possibilities you might suffer?

[MINOR]: Yeah.

[COURT]: What do you understand are any risks that are involved?

[MINOR]: Well, I hear you have bad cramps or you may get something up inside you that could cause risks.

The minor has also discussed her pregnancy with her 25-year-old married sister, who is herself the mother of a young child. The sister assisted the minor in purchasing a home pregnancy test and has discussed with the minor the risks involved in an abortion, as well as alternatives to abortion, testifying that she has given the minor all the information she could so as to assist her in making an informed choice.

The sister also testified that when she lived with her parents, she was afraid of her father and is sure that he would kick the minor out of the house if he discovered that she is pregnant. In fact, the father has told the sister that if the minor becomes pregnant, she will be out of the house. In the sister's view, her father, who is "very firm in his ways," would consider the matter an embarrassment to the family, and the fact that the person who impregnated the minor lives in the neighborhood would make the situation a "neighborhood tragedy." The sister thought her mother would likely go along with her father's decision.

The minor considers herself too young and not responsible enough for childbirth and testified that she "wouldn't be able to go through that." She is of the opinion that it is in her best interests to have an abortion and that she has made a mature decision. The sister also believes that it is in the minor's best interests to have an abortion.

Having reviewed the evidence, the determination to be made at this point is where the burden of proof lies. The U.S. Supreme Court has ruled that the state is not required, in a proceeding to judicially bypass parental notification requirements, to bear the burden of proof on the issues of maturity and best interests. *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 110 S. Ct. 2972, 111 L. Ed. 2d 405 (1990).

Therefore, in keeping with our general rule that it is the party asserting the affirmative of an issue that bears the burden of proof on that issue, see *Alliance RR. Comm. Credit Union v. County of Box Butte*, 243 Neb. 840, 503 N.W.2d 191 (1993), we hold that in a proceeding brought under the provision of the statutes here involved, the burden of proof on all issues rests with the pregnant minor. Furthermore, § 71-6903 does not specify the requisite standard of proof. Considering the magnitude of the decision at issue, the fact that the proceedings are ex parte in nature, and recognizing that any evidence will usually satisfy the preponderance of the evidence standard, we think it necessary that the pregnant minor establish, by clear and convincing evidence, her maturity or that the performance of an abortion upon her without parental notification is in her best interests. This heightened evidentiary standard is consonant with those federal constitutional concerns addressed in *Ohio v. Akron Center for Reproductive Health, supra*, and consistent with this court's past decisions where we required a heightened evidentiary standard to protect a constitutional interest when none was specified in the statutory text. *State v. Souza-Spittler*, 204 Neb. 503, 283 N.W.2d 48 (1979).

Maturity is "difficult to define, let alone determine . . . ." *Bellotti v. Baird*, 443 U.S. 622, 643-44 n.23, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979) (commonly referenced as *Bellotti II*). Notwithstanding, determine it we must. While the U.S. Supreme Court has not explicitly defined "maturity" in the con-

text of parental notification or consent statutes, it has observed that "minors often lack the *experience, perspective, and judgment* to recognize and avoid choices that could be detrimental to them." (Emphasis supplied.) *Id.*, 443 U.S. at 635.

Other courts have likewise concluded that maturity may be measured by examining the minor's experience, perspective, and judgment. Particularly insightful is *H___ B___ v. Wilkinson*, 639 F. Supp. 952, 954 (D. Utah 1986), which states:

> Manifestly, as related to a minor's abortion decision, maturity is not solely a matter of social skills, level of intelligence or verbal skills. More importantly, it calls for experience, perspective and judgment. As to experience, the minor's prior work experience, experience in living away from home, and handling personal finances are some of the pertinent inquiries. Perspective calls for appreciation and understanding of the relative gravity and possible detrimental impact of each available option, as well as realistic perception and assessment of possible short term and long term consequences of each of those options, particularly the abortion option. Judgment is of very great importance in determining maturity. The exercise of good judgment requires being fully informed so as to be able to weigh alternatives independently and realistically. Among other things, the minor's conduct is a measure of good judgment. Factors such as stress and ignorance of alternatives have been recognized as impediments to the exercise of proper judgment by minors, who because of those factors "may not be able intelligently to decide whether to have . . . an abortion." [Citation omitted.] Experience, perspective and judgment are often lacking in unemancipated minors who are wholly dependent and have never lived away from home or had any significant employment experience.

While any list of suggested criteria bearing upon the imponderable matter of defining and determining maturity in minors is not meant to be exhaustive, we conclude that the criteria set forth in *H___ B___ v. Wilkinson, supra*, serve as appropriate guideposts in making such a determination.

With that in mind, we, giving weight to the fact that the judge below saw and heard the witnesses, independently conclude that the minor has failed to sustain her burden of proving by clear and convincing evidence that she is mature within the meaning of § 71-6903(1). The record indicates that the minor lives with her parents, has never lived on her own, and has never handled her personal finances or held employment other than a summer job detasseling corn. The testimony did not indicate that the minor understood and appreciated the gravity and impact of each option before her. Neither did the record indicate that she understood and appreciated the short- and long-term consequences of her desire to seek an abortion. At best, the testimony revealed that the minor was afraid of her father's reaction should he learn of her pregnancy and of the embarrassment her father would suffer if her pregnancy were revealed. Finally, the minor was unable to communicate to the judge a sufficient understanding of the medical procedure involved, the associated risks, or of any alternatives to abortion. Certainly, the 13-year-old minor in the instant case did not demonstrate, by clear and convincing evidence, a level of experience, perspective, or judgment sufficient to allow this court to consider her mature within the meaning of the statute.

Having made that determination, we need not consider whether the minor would otherwise have been capable of giving informed consent to the proposed procedure.

However, we must determine whether, notwithstanding the minor's immaturity, the performance of an abortion without notification of her parent would nonetheless be in her best interests. § 71-6903(1).

Upon our de novo review, we independently conclude that the minor has failed to sustain her burden of proof with respect to this issue as well. The minor testified that she feels close to her mother. As set forth earlier, § 71-6902 requires only that notice be given to "*the parent*" of "a pregnant woman," and § 71-6903(1) empowers a judge to act when "a pregnant woman elects not to notify *her parent*." (Emphasis supplied.) Moreover, § 71-6901(3) defines "parent" as meaning "one parent" and requires the attending physician to "certify in writing in the pregnant woman's medical record the parent . . . selected by the

woman." The minor has not provided a sufficient rationale for us to conclude that notification to at least *one* of her parents would not be in her best interests.

Accordingly, to the extent that the district court order may require that both parents must be notified, it is modified to require that only the minor's mother or father, as selected by the minor, be notified.

### III. JURISDICTION

The dissent, sua sponte, asserts that the district court lacked jurisdiction to entertain this matter, and as a result, we lack jurisdiction to review the merits of the instant case. The dissent contends that where Nebraska's judicial bypass statute contemplates that only the minor's interests be presented to the court, there can be no case or controversy sufficient to vest jurisdiction in this court or the lower court. It is the dissent's view that no justiciable issue can be presented to a court in the absence "of anyone designated to represent the parental interest in a confidential manner." The dissent further suggests that, in passing § 71-6903, the Legislature violated Neb. Const. art. II, § 1 (separation of powers), by attempting to confer upon our courts nonjudicial regulatory duties not ordinarily or traditionally held to be within the constitutional powers of the judicial department.

Before addressing either of the above contentions, it is important to note that the U.S. Supreme Court has considered and extensively analyzed the delicate balance of the competing constitutional rights between an unmarried pregnant minor's right of privacy and her parents' right to guide her upbringing. In *Bellotti II*, the Court detailed the guiding role of parents in the upbringing of their children and recognized the parents' claim to authority in their own household to direct the rearing of their children as basic in the structure of our society. In fact, in *Bellotti II*, it was these parental interests, along with the interest of the state in encouraging an unmarried minor to seek the advice of her parents in deciding whether or not to bear a child, that were balanced with the constitutional right of a woman, in consultation with her physician, to choose to terminate her pregnancy as established by *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973).

The Court, after balancing the above interests, held that if a state decides to require a pregnant minor to obtain one or both parents' consent to an abortion, it also must provide an alternative procedure whereby authorization for the abortion can be obtained. *Bellotti II, supra.* Interestingly, the Court suggested in a footnote that a state could "delegate the alternative procedure to a juvenile court or an administrative agency or officer," and not necessarily to a court of general jurisdiction. 443 U.S. at 643 n.22. However, if a state chooses a court of general jurisdiction as its forum for the alternate adjudicative procedure, the Court was rather clear in its directive:

> [E]very minor must have the opportunity—if she so desires—to go directly to a court without first consulting or notifying her parents. If she satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent. If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interests. If the court is persuaded that it is, the court must authorize the abortion. If, however, the court is not persuaded by the minor that she is mature or that the abortion would be in her best interests, it may decline to sanction the operation.

443 U.S. at 647-48.

In addition, the Court held that the bypass procedure must ensure the minor's anonymity and provide for confidentiality and that it must be conducted expeditiously so as to allow an effective opportunity for the minor to obtain an abortion following the decision. *Id.* See, also, *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 110 S. Ct. 2972, 111 L. Ed. 2d 405 (1990).

The Nebraska Legislature enacted § 71-6903 to ensure a judicial resolution of the issues when a minor seeks to obtain an abortion without first notifying one of her parents, while also safeguarding the minor's privacy and her interest in a prompt resolution. When the Legislature has expressly chosen a judicial forum for the resolution of these issues, it is not this court's

province to rewrite the statute or suggest alternate or additional procedures to be utilized in this context, unless the judicial bypass statute violates (1) the state Constitution, (2) the federal Constitution (or any federal law made pursuant thereto), or (3) a federal treaty. See U.S. Const. art. VI. See, also, *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994) (finding that it was not office of this court to extend time limitation set by Legislature); *Anderson v. Peterson*, 221 Neb. 149, 375 N.W.2d 901 (1985) (refusing to rewrite statute and finding that court's role is limited to interpretation and application, so long as questioned statute does not violate a constitutional requirement); *Bowers v. Maire*, 179 Neb. 239, 137 N.W.2d 796 (1965) (Supreme Court will not indulge in judicial legislation).

In that vein, the dissent asserts that the Legislature unconstitutionally conferred upon the judiciary a regulatory duty better suited for some other agency of the state when it passed § 71-6903. Suffice it to say that the U.S. Supreme Court could hardly be clearer in stating that a state's judiciary is a proper forum in which a pregnant minor may seek authorization for an abortion in the absence of parental consent. See, *Bellotti II*; *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992); *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 103 S. Ct. 2481, 76 L. Ed. 2d 687 (1983); *Ohio v. Akron Center for Reproductive Health, supra*; *Hodgson v. Minnesota*, 497 U.S. 417, 110 S. Ct. 2926, 111 L. Ed. 2d 344 (1990). We will not conclude, 17 years after *Bellotti II*, that Nebraska's judicial bypass procedure is a mere regulatory duty that may not properly be exercised by the judicial branch. The Legislature stayed within proper constitutional bounds in setting forth the judicial bypass procedure in § 71-6903.

The dissent also contends that there was no case or controversy sufficient to vest jurisdiction in this court or the lower court. Unlike the U.S. Constitution, the Constitution of the State of Nebraska does not require the existence of an actual case or controversy for jurisdiction to vest in the courts of the state (cf. U.S. Const. art. III, § 2). However, our case law has required that for there to be an exercise of judicial power in Nebraska, an actual case or controversy must be presented. *Welch v. Welch*,

246 Neb. 435, 519 N.W.2d 262 (1994); *State v. Baltimore*, 242 Neb. 562, 495 N.W.2d 921 (1993); *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989). A court decides real controversies and determines rights actually controverted, and does not address or dispose of abstract questions or issues that might arise in a hypothetical or fictitious situation or setting. *Welch v. Welch, supra; State v. Baltimore, supra.*

In the present case, there was clearly an actual controversy to be determined. The minor's pregnancy was not hypothetical or speculative. The minor's request for relief from the parental notification requirement of the statute, § 71-6902, did not present an abstract question, but was, rather, a request for a determination of important rights. Under the statute, the minor would not be able to obtain an abortion without notifying a parent unless the court granted her petition.

Even under federal constitutional standards, this case presents an actual case or controversy for resolution. Justice Frankfurter noted that "[w]hether 'justiciability' exists . . . has most often turned on evaluating both the appropriateness of the issues for decision by courts and the hardship of denying judicial relief." *Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 156, 71 S. Ct. 624, 95 L. Ed. 817 (1951) (Frankfurter, J., concurring). The issues presented in the judicial bypass context are clearly appropriate for decisions by courts. The determinations of whether a particular minor possesses sufficient maturity and information to make the decision or whether, in any case, an abortion would be in her best interests are the types of questions that courts are uniquely called upon to answer. Moreover, the Court has noted the hardship of denying judicial relief in this context. The need to preserve the constitutional right to seek an abortion; the unique nature of the abortion decision, which "effectively expires in a matter of weeks"; and the far-reaching consequences of the decision were factors that led the Court to require an alternative to a blanket parental notice or consent requirement. *Bellotti II*, 443 U.S. at 642.

In an analogous context, a disbarment action at which the committee did not appear, the Court found that "the consideration of the petition by the Supreme Court, the body which has authority itself by its own act to give the relief sought, makes

the proceeding adversary in the sense of a true case or controversy." *In re Summers*, 325 U.S. 561, 568, 65 S. Ct. 1307, 89 L. Ed. 1795 (1945). The Court continued:

> A claim of a present right to admission to the bar of a state and a denial of that right is a controversy. When the claim is made in a state court and a denial of the right is made by judicial order, it is a case which may be reviewed under Article III of the Constitution . . . .

325 U.S. at 568-69. Similarly, a pregnant minor has a claim of present right to obtain an abortion, and a denial of that right undoubtedly presents a controversy.

In concluding that there is an actual case or controversy in the instant case, we are mindful that the U.S. Supreme Court, in its review of Ohio's judicial bypass procedure 11 years after *Bellotti II*, recognized that the nature of bypass proceedings is such that the opposing side may not be represented. See *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 110 S. Ct. 2972, 111 L. Ed. 2d 405 (1990). "A State, moreover, may require a heightened standard of proof when, as here, the bypass procedure contemplates an *ex parte* proceeding at which no one opposes the minor's testimony. We find the clear and convincing standard used in [the statute] acceptable." (Emphasis in original.) *Id.*, 497 U.S. at 516.

Accordingly, we determine that the instant case presents an immediate dispute affecting the rights of the pregnant minor, which dispute was brought before the district court pursuant to constitutional procedures provided by statute. Thus, there is an actual controversy in the instant case sufficient to vest jurisdiction in the district court to decide the matter and in this court to review the lower court's decision.

## IV. JUDGMENT

Based on the foregoing reasons, we affirm the order of the district court except to the extent that the district court order requires that both parents must be notified, and the order is modified to require that only the minor's mother or father, as selected by the minor, be notified.

AFFIRMED AS MODIFIED.

WHITE, C.J., concurs in the result.

CAPORALE, J., dissenting.

I respectfully dissent. I submit that the judge below had no jurisdiction to entertain this matter under the provisions of Neb. Rev. Stat. § 71-6901 et seq. (Cum. Supp. 1994) and that as a consequence, we have no jurisdiction to review it.

Although jurisdiction was not one of the issues presented by the questions certified to us by the U.S. District Court for the District of Nebraska with regard to a predecessor statute, *Orr v. Knowles*, 215 Neb. 49, 337 N.W.2d 699 (1983), and thus not addressed therein, I begin by recalling that an appellate court has both the power and duty to consider on its own motion whether the lower tribunal had, and thus the appellate court has, jurisdiction over the matter then before it. See, *Jones v. State*, 248 Neb. 158, 532 N.W.2d 636 (1995); *WBE Co. v. Papio-Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995); *R-D Investment Co. v. Board of Equal. of Sarpy Cty.*, 247 Neb. 162, 525 N.W.2d 221 (1995).

As the majority correctly notes, we have held that while not a constitutional prerequisite, the existence of an actual case or controversy nevertheless is necessary for the courts of this state to exercise the judicial power vested in them by Neb. Const. art. V, § 1. *Professional Firefighters of Omaha v. City of Omaha*, 243 Neb. 166, 498 N.W.2d 325 (1993). See, also, *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d 262 (1994); *State v. Baltimore*, 242 Neb. 562, 495 N.W.2d 921 (1993); *Mullendore v. Nuernberger*, 230 Neb. 921, 434 N.W.2d 511 (1989).

In *Flast v. Cohen*, 392 U.S. 83, 95, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968), the U.S. Supreme Court wrote that the case or controversy requirement found in U.S. Const. art. III limits the business of the federal courts to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." The U.S. Supreme Court has further explained that the "clash of adverse parties ' "sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." ' " *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 382-83, 100 S. Ct. 1194, 63 L. Ed. 2d 467 (1980).

As the U.S. Court of Appeals for the Eighth Circuit explained in considering the case or controversy requirement in the con-

text of a complaint seeking a declaratory judgment, the test is whether " 'there is a substantial controversy between the parties having adverse legal interests . . . .' " *Marine Equipment Management Co. v. U.S.*, 4 F.3d 643, 646 (8th Cir. 1993). The test is not satisfied if the court does not have before it "opposing parties that are fairly motivated to diligently and effectively present the merits of all sides of the issues presented, thereby facilitating the court's efforts to reach the correct results." *Financial Guar. Ins. v. City of Fayetteville, Ark.*, 943 F.2d 925, 929 (8th Cir. 1991).

Neb. Const. art. II, § 1, divides the governance of this state among legislative, executive, and judicial departments and provides that "no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." In recognition of that constitutional provision, we have held on numerous occasions that the Legislature cannot confer upon the courts nonjudicial duties. See, *Williams v. County of Buffalo*, 181 Neb. 233, 147 N.W.2d 776 (1967) (legislative act attempting to confer upon courts power of determining what lands should be annexed to city violated Constitution); *Furstenberg v. Omaha & C. B. Street R. Co.*, 132 Neb. 562, 272 N.W. 756 (1937) (Supreme Court has no power to regulate public utilities); *Searle v. Yensen*, 118 Neb. 835, 226 N.W. 464 (1929) (statute requiring court to determine whether power district should be incorporated, what its boundaries should be, et cetera, is invalid, as imposing nonjudicial duties); *State v. Neble*, 82 Neb. 267, 117 N.W. 723 (1908) (statute providing for appointment of municipal park commissioners by judges of district court is void, as violating Constitution); *Tyson v. Washington County*, 78 Neb. 211, 110 N.W. 634 (1907) (statute cannot vest judiciary with legislative functions under subterfuge of giving court jurisdiction over such questions on appeal); *Horbach v. Tyrrell*, 48 Neb. 514, 518, 67 N.W. 485, 486 (1896) (taking of acknowledgment ministerial, not judicial, act, judicial power being "authority of some person or tribunal to hear and determine a controversy and to reduce such determination to a judgment or decree binding the parties thereto").

Accordingly, while duties which are inherently judicial, such as the fixing of qualifications for and admission to the practice of law, do not require the existence of a case or controversy, see *State, ex rel. Wright, v. Hinckle*, 137 Neb. 735, 291 N.W. 68 (1940), disputes involving other branches of government will be decided only where there exists a case or controversy, see *State Securities Co. v. Ley*, 177 Neb. 251, 128 N.W.2d 766 (1964).

In the context presented, there can be no case or controversy where the proceeding contemplates that only the minor's interests be presented to the court. Indeed, we implicitly so recognized in *United Community Services v. The Omaha Nat. Bank*, 162 Neb. 786, 77 N.W.2d 576 (1956), a case involving the constitutionality of a statute, in which case it became apparent that all the parties were interested in achieving the same result. We thereupon directed the Attorney General to appear and file a brief in order that we might have "a better opportunity of being informed as to the questions involved." *Id.* at 789, 77 N.W.2d at 581. It is no answer to suggest that in a proceeding such as that now before us, protecting the parent's interest is somehow the obligation of the judge initially hearing the matter, for that judge is, as is this court, under a duty to impartially evaluate the evidence presented. A court can neither develop nor present evidence. See, *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994); Neb. Code of Jud. Cond., Canon 3 (rev. 1996).

Thus, contrary to our jurisdictional case or controversy requirement, the statutory provisions at issue attempt to confer upon our courts nonjudicial regulatory duties not ordinarily or traditionally held to be within the constitutional powers of the judicial department.

I recognize, of course, that under U.S. Const. art. VI, the provisions of the federal Constitution and the laws of the United States made pursuant thereto are "the supreme Law of the Land" and bind "the Judges in every State," anything in the Constitution or laws of "any State to the Contrary notwithstanding."

I understand, too, that under the Constitution of the United States, if a state requires a pregnant minor to obtain parental consent to an abortion, the state must provide an alternative pro-

cedure whereby authorization may be obtained and that such proceeding must assure anonymous and expeditious resolution of the issue. *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 110 S. Ct. 2972, 111 L. Ed. 2d 405 (1990); *Bellotti v. Baird*, 443 U.S. 622, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979); *Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 96 S. Ct. 2831, 49 L. Ed. 2d 788 (1976). However, I find nothing in federal law which dictates that the proceeding must be conducted in the absence of the confidential representation of the parental interest to raise one's children. *Ohio, supra*, merely observes that as the proceeding therein was ex parte, the state could impose upon the minor the heightened clear and convincing standard of proof. We must remember that the U.S. Supreme Court has declared, under the rubric of personal or family privacy and autonomy, that an individual's freedom of personal choice in matters involving family relationships is a fundamental liberty interest protected by U.S. Const. amend. XIV. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). The Court has also recognized that the aforementioned liberty interest includes a parent's right to rear or direct the upbringing of one's child. See *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). See, also, *Bd. of Dirs. of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925). Moreover, these are concerns in which the state itself also has a stake. *Hodgson v. Minnesota*, 497 U.S. 417, 110 S. Ct. 2926, 111 L. Ed. 2d 344 (1990) (rights to conceive and raise one's children are essential, basic civil rights far more precious than property rights, and when parent has assumed primary responsibility for minor's well-being, state may properly enact laws designed to aid discharge of that responsibility).

Therefore, the absence in these proceedings of anyone designated to represent the parental interest in a confidential manner means that under Nebraska law there was before the judge below no case or controversy which presented a justiciable issue. As a consequence, the judge below lacked jurisdiction to entertain the matter. That being so, we lack jurisdiction to

review the merits. *Payne v. Nebraska Dept. of Corr. Servs.*, 249 Neb. 150, 542 N.W.2d 694 (1996) (when lower court lacks jurisdiction to adjudicate merits, appellate court also lacks power to determine merits). See, also, *Currie v. Chief School Bus Serv.*, 250 Neb. 872, 553 N.W.2d 469 (1996) (although extrajurisdictional act of lower court does not vest appellate court with jurisdiction over merits, appellate court has duty to determine whether lower court possessed subject matter jurisdiction).

I would therefore remand with the direction to dismiss.

FAHRNBRUCH and LANPHIER, JJ., join in this dissent.