appropriation application. But standing is determined as it exists when the litigation is commenced.[49] So to hold that existing appropriators do not have standing to object to an appropriation application effectively ensures that no one has standing to object because no appropriator junior to the application will normally exist.

Because the Department's actions affect so many lives and livelihoods, I believe this result is a mistake. The majority's holding will allow the Department to act with impunity because its grant of new appropriations will be immune from adversarial challenge and judicial review. The majority's opinion puts the appellants in a legal straitjacket. And this result is not required by, nor consistent with, our previous decisions on standing in water cases or the Department's own regulations.

In sum, the information submitted with NPPD's own application is sufficient to show at the pleading stage that the alleged injury is imminent, not remote or speculative. But to affirm the director's order, the majority opinion has ignored NPPD's flowchart; ignored the Department's own actions and regulations; distorted our standing standards in a manner that will preclude standing in many future cases; and ignored our case law upholding standing for landowners in similar cases. Its conclusion that the appellants' alleged injury is too speculative rests almost entirely upon a single misconstrued statement made in dicta.

---

[49] See *id*.

---

IN RE PETITION OF ANONYMOUS 5, A MINOR.
___ N.W.2d ___

Filed October 4, 2013.    No. S-13-510009.

1. **Abortion: Minors: Physicians and Surgeons.** Generally, an abortion cannot be performed upon an unemancipated pregnant woman under 18 years of age unless a physician obtains the notarized written consent of both the pregnant woman and one of her parents or a legal guardian.

2. **Statutes: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.

3. **Abortion: Minors: Judgments: Appeal and Error.** Under Neb. Rev. Stat. § 71-6904(6) (Cum. Supp. 2012), the Nebraska Supreme Court hears an appeal from a final order denying authorization for an abortion without the consent of a parent or guardian de novo on the record. Accordingly, the court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.

4. ____: ____: ____: ____. Although the Nebraska Supreme Court's review of a final order denying authorization for an abortion without the consent of a parent or guardian is de novo on the record, the court may consider and give weight to the fact that the judge below heard and observed the witnesses.

5. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

6. **Parental Rights: Parent and Child.** An order terminating the parent-juvenile relationship shall divest the parent and juvenile of all legal rights, privileges, duties, and obligations with respect to each other.

7. **Statutes: Appeal and Error.** When possible, an appellate court will try to avoid a statutory construction that would lead to an absurd result.

8. **Abortion: Minors: Statutes: Intent.** The obvious intent of Neb. Rev. Stat. § 71-6903(3) (Cum. Supp. 2012) is to avoid requiring a pregnant woman to obtain the consent of a parent or guardian who has abused or neglected her, acts which evidence an obvious disregard of her best interests or well-being.

9. **Abortion: Minors: Pleadings: Proof.** Under the "evidence of abuse . . . or child abuse or neglect" provision of Neb. Rev. Stat. § 71-6903(3) (Cum. Supp. 2012), the pregnant woman must establish that a parent or guardian, who occupies that role in relation to her at the time she files her petition for waiver of parental consent, has either abused her as defined in Neb. Rev. Stat. § 28-351 (Cum. Supp. 2012) or subjected her to child abuse or neglect as defined in Neb. Rev. Stat. § 28-710 (Reissue 2008).

10. **Abortion: Minors: Proof.** In a proceeding brought under the provisions of Neb. Rev. Stat. § 71-6901 et seq. (Cum. Supp. 2012), the burden of proof on all issues rests with the petitioner, and such burden must be established by clear and convincing evidence.

11. **Minors: Emancipation.** Experience, perspective, and judgment are often lacking in unemancipated minors who are wholly dependent and have never lived away from home or had any significant employment experience.

12. **Pleadings.** The issues in a case are framed by the pleadings.

13. **Abortion: Minors: Pleadings.** A petition for waiver of parental consent—which seeks authorization from the court to have an abortion without notarized written consent of a parent or guardian of the petitioner—is limited in scope. The scope of this special statutory proceeding is defined by Neb. Rev. Stat. §§ 71-6901, 71-6903, and 71-6904 (Cum. Supp. 2012).

14. **Abortion: Legislature.** Neb. Rev. Stat. § 71-6903 (Cum. Supp. 2012) is a creation of the Legislature and did not exist at common law.

15. **Abortion: Courts: Jurisdiction.** The district court's jurisdiction over proceedings pursuant to Neb. Rev. Stat. § 71-6901 et seq. (Cum. Supp. 2012) arises from a legislative grant and is inherently limited by the grant.

16. \_\_\_\_: \_\_\_\_: \_\_\_\_. Because of the limited scope of an action pursuant to Neb. Rev. Stat. § 71-6901 et seq. (Cum. Supp. 2012), in hearing such a matter, the district court acts as a special statutory tribunal to summarily decide the issues authorized by the statute.

17. **Constitutional Law: Statutes: Legislature: Courts.** When the Legislature has expressly chosen a judicial forum for the resolution of issues under Neb. Rev. Stat. § 71-6903 (Cum. Supp. 2012), it is not the Nebraska Supreme Court's province to rewrite the statute or suggest alternate or additional procedures to be utilized in this context, unless the judicial bypass statute violates the state or federal Constitutions or a federal treaty.

18. **Legislature: Declaratory Judgments.** The Legislature has authorized a declaratory judgment action.

19. **Constitutional Law: Jurisdiction: Equity.** The equity jurisdiction of the district court is granted by the Constitution and cannot be legislatively limited or controlled.

20. **Administrative Law: Minors: Guardians and Conservators.** The Nebraska Department of Health and Human Services is the legal guardian of all children committed to it.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Catherine Mahern for petitioner.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

## INTRODUCTION

[1] Generally, an abortion cannot be performed upon an unemancipated pregnant woman under 18 years of age unless a physician obtains the notarized written consent of both the pregnant woman and one of her parents or a legal guardian.[1] This proceeding was instituted under the provisions of Neb. Rev. Stat. § 71-6901 et seq. (Cum. Supp. 2012) by a pregnant 16-year-old (petitioner) seeking authorization for an abortion without consent of a parent or guardian. The district court denied her request, and pursuant to the expedited procedures

---

[1] Neb. Rev. Stat. § 71-6902 (Cum. Supp. 2012).

outlined in § 71-6904, she appeals to this court. Because we determine that petitioner did not establish by clear and convincing evidence that she is a victim of abuse or neglect under § 71-6903(3) or that she is sufficiently mature and well informed to decide on her own whether to have an abortion, we affirm the judgment of the district court.

## BACKGROUND

Petitioner is 16 years old and 10 weeks along in her pregnancy. Due to abuse and neglect by petitioner's biological parents, a juvenile court entered an order in February 2011, placing her temporary custody with the Nebraska Department of Health and Human Services (Department). A juvenile case was initiated, and petitioner and her two siblings, ages 9 and 7, were placed in a foster home through the Department. In May 2013, the juvenile court entered an order terminating by relinquishment the parental rights of petitioner's biological parents.

At the confidential hearing, petitioner explained her desire for an abortion. She testified that she would not be able to financially support a child or "be the right mom that [she] would like to be right now." She feared that she might lose her foster placement if her foster parents learned of her pregnancy. Petitioner testified that her foster parents have strong religious beliefs about abortion. She felt that her foster parents "would not okay" an abortion and that "they would not just be taking it out on [petitioner], it would also be taken out on the child." Petitioner believed that putting the child up for adoption would be worse for her and her family because her foster parents would have resentment toward her. Petitioner feared that her foster parents would tell her siblings that she was a "bad person." The court stated that "when you have the abortion it's going to kill the child inside you," and petitioner responded that she understood. Petitioner answered, "Yes," when the court asked if she would "rather do that than to risk problems with the foster care people?"

The district court determined that because the parental rights of petitioner's biological parents had been terminated, her guardians for the purpose of consent to have an abortion would

be her foster parents. The court found that petitioner was not sufficiently mature to decide whether to have an abortion. The court noted that petitioner is 16 years old, is not self-sufficient, and is dependent upon her foster parents. The court found that it is not in the best interests of petitioner to have an abortion without the consent of one of her foster parents. The court reasoned that "[j]ust because her foster parents have strongly held religious beliefs, does not mean that they will not act in the Petitioner's best interest." Therefore, the court denied petitioner's request for an abortion without the consent of one of her foster parents.

## ASSIGNMENTS OF ERROR

Petitioner assigns, reordered, that the district court erred in (1) failing to recuse itself from the case for lack of impartiality, (2) failing to authorize waiver of parental consent where there was clear and convincing evidence that there was abuse as defined in Neb. Rev. Stat. § 28-351 (Cum. Supp. 2012) or child abuse or neglect as defined in Neb. Rev. Stat. § 28-710 (Reissue 2008), (3) finding that there was not clear and convincing evidence that petitioner was both sufficiently mature and well informed to decide whether to have an abortion, (4) failing to find that petitioner was entitled to consent to her own abortion procedure because she is a ward of the State, and (5) finding that petitioner's foster parents were her guardians for the purpose of seeking consent to an abortion.

## STANDARD OF REVIEW

[2] The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.[2]

[3,4] Under § 71-6904(6), we hear the appeal de novo on the record. Accordingly, we reappraise the evidence as presented by the record and reach our own independent conclusions with respect to the matters at issue.[3] Although our review is de novo on the record, we may consider and give

---

[2] *Pinnacle Enters. v. City of Papillion, ante* p. 322, ___ N.W.2d ___ (2013).

[3] *In re Petition of Anonymous 3*, 279 Neb. 912, 782 N.W.2d 591 (2010).

weight to the fact that the judge below heard and observed the witnesses.[4]

## ANALYSIS

Before reaching the errors assigned by petitioner, we digress to note that the Legislature recently made significant changes to § 71-6901 et seq.[5] This case presents the first opportunity to consider the waiver of consent of a parent or guardian[6] and the provision regarding abuse or neglect of the pregnant woman.[7]

### Recusal

[5] Petitioner contends that the judge's questioning of her at the end of the proceeding demonstrated a lack of impartiality such that the judge should have recused himself. However, petitioner did not raise this issue before the district court. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[8] Accordingly, we do not consider this assignment of error.

### Victim of Abuse
### or Neglect

Under the pertinent portions of § 71-6903(3), a court must authorize an abortion without the consent of a parent or a guardian

> [i]f the court finds, by clear and convincing evidence, that there is evidence of abuse as defined in [§] 28-351 . . . or child abuse or neglect as defined in [§] 28-710 of the pregnant woman by a parent or a guardian or that an abortion without the consent of a parent or a guardian is in the best interest of the pregnant woman . . . .

Petitioner does not argue on appeal that an abortion without the consent of a parent or a guardian is in her best interests.

---

[4] See *In re Petition of Anonymous 2*, 253 Neb. 485, 570 N.W.2d 836 (1997).

[5] See 2011 Neb. Laws, L.B. 690, §§ 3 through 15.

[6] See § 71-6903(2) and (3).

[7] See § 71-6903(3).

[8] *Weber v. Gas 'N Shop*, 278 Neb. 49, 767 N.W.2d 746 (2009).

Thus, we limit our consideration to whether petitioner established evidence of abuse or neglect within the meaning of the statute.

The evidence in the record establishes abuse and neglect by petitioner's biological parents, but that does not end our inquiry under the circumstances of this case. Petitioner's biological father fractured her collarbone and shoulder blade in 2011 and was ultimately convicted of third degree assault. Thus, it is clear that petitioner suffered abuse under § 28-351 by her biological father. The record also establishes that petitioner's biological mother had a drug problem and that she did not contest the allegations of neglect contained in the juvenile petition. There is clear and convincing evidence that petitioner was a victim of neglect under § 28-710 by her biological mother.

[6] But the biological parents no longer have any legal rights or responsibilities relating to petitioner. A court entered an order terminating the parental rights of petitioner's biological parents in May 2013. There was no appeal from the termination order, and it is a final judgment. "An order terminating the parent-juvenile relationship shall divest the parent and juvenile of all legal rights, privileges, duties, and obligations with respect to each other . . . ."[9] Because the parent-child relationship has been judicially severed in this case, no consent is required from either of petitioner's biological parents. And there is no evidence of abuse or neglect by anyone other than her biological parents.

Petitioner argues that the district court erred in finding that the abuse by her biological father in 2011 was not related to her pregnancy or her ability to seek the consent of her foster parents. She cites *Ebert v. Nebraska Dept. of Corr. Servs.*[10] and argues that a court cannot read a meaning into a statute that is not warranted by the language. Petitioner is technically correct that "[n]othing in the statute makes reference to when the abuse, or child abuse or neglect must have taken place,

---

[9] Neb. Rev. Stat. § 43-293 (Reissue 2008).

[10] *Ebert v. Nebraska Dept. of Corr. Servs.*, 11 Neb. App. 553, 656 N.W.2d 634 (2003).

nor does the statute state that the abuse must be related to a woman's pregnancy."[11]

[7] But petitioner's interpretation of the statutory language would lead to an absurd result. For example, imagine a child who was abused by her father as a newborn, whose mother divorced the father and raised the child in a safe and loving home, and who 16 years later becomes pregnant and desires an abortion without her mother's consent. Under petitioner's interpretation, the court would automatically have to issue an order authorizing the abortion without the consent of the pregnant woman's mother based solely on abuse by a different parent a decade and a half earlier. Such a result is illogical and could not have been intended by the Legislature. When possible, an appellate court will try to avoid a statutory construction that would lead to an absurd result.[12] Here, petitioner's interpretation would lead to the equally absurd result that because she was abused and neglected by persons from whom no consent is necessary, no consent from anyone is required. Thus, we reject petitioner's interpretation.

[8,9] But an alternative interpretation exists—one that clearly preserves the intent of the Legislature. The obvious intent of § 71-6903(3) is to avoid requiring a pregnant woman to obtain the consent of a parent or guardian who has abused or neglected her, acts which evidence an obvious disregard of her best interests or well-being. Here, petitioner was abused and neglected by her biological parents, and as stated above, she need not obtain consent from them because their parental rights have been terminated. We hold that under the "evidence of abuse . . . or child abuse or neglect" provision of § 71-6903(3), the pregnant woman must establish that a parent or guardian, who occupies that role in relation to her at the time she files her petition for waiver of parental consent, has either abused her as defined in § 28-351 or subjected her to child abuse or neglect as defined in § 28-710. Petitioner has failed to meet this burden.

---

[11]  Brief for petitioner at 11.

[12]  *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013).

This does not mean that abuse or neglect by a parent or guardian must be ongoing or recently inflicted at the time of a petition for judicial consent. It simply means that the abuse or neglect must have been inflicted by a parent or guardian who still functions in that capacity at the time of the petition for judicial consent.

### Mature and Well Informed

[10] Next, we consider whether petitioner established that she "is both sufficiently mature and well-informed to decide whether to have an abortion."[13] In a proceeding brought under the provisions of § 71-6901 et seq., the burden of proof on all issues rests with the petitioner, and such burden must be established by clear and convincing evidence.[14]

"Maturity is 'difficult to define, let alone determine . . . .'"[15] But it may be measured by examining the minor's experience, perspective, and judgment.[16] Matters that reflect on a pregnant minor's experience include her prior work experience, her experience in living away from home, and her handling of personal finances.[17] Her perspective could be determined by looking "'for appreciation and understanding of the relative gravity and possible detrimental impact of each available option, as well as realistic perception and assessment of possible short term and long term consequences of each of those options, particularly the abortion option.'"[18] As to a pregnant minor's judgment, "'[t]he exercise of good judgment requires being fully informed so as to be able to weigh alternatives independently and realistically.'"[19] In evaluating her maturity, a trial court "'may draw inferences from the minor's

---

[13] See § 71-6903(2).

[14] *In re Petition of Anonymous 3, supra* note 3.

[15] *In re Petition of Anonymous 1*, 251 Neb. 424, 428, 558 N.W.2d 784, 787 (1997) (quoting *Bellotti v. Baird*, 443 U.S. 622, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979)).

[16] See *id*.

[17] See *id*.

[18] *Id*. at 429, 558 N.W.2d at 788.

[19] *Id*.

composure, analytic ability, appearance, thoughtfulness, tone of voice, expressions, and her ability to articulate her reasoning and conclusions.'"[20] The latter items are matters that we cannot discern from the cold record before us and are another reason why we elect to give weight to the fact that the trial judge heard and observed petitioner in finding her not to be mature and well informed.

[11] As is undoubtedly typical in such cases, the only testimony we have to review is that of petitioner. She will turn 17 years old in October 2013 and is unemancipated.[21] She testified that she mostly raised her younger siblings because her parents "were never around." Petitioner will be a senior in high school and plans to graduate early—in December—but she did not adduce any evidence about the grades that she has received. She wants to move out of her foster parents' house after she graduates and has saved enough money to live on her own. Petitioner has not lived on her own, and she is dependent upon her foster parents for financial support. She plans to attend college, either in December or after working for "a little bit." Petitioner did not testify about any work experience. "'Experience, perspective and judgment are often lacking in unemancipated minors who are wholly dependent and have never lived away from home or had any significant employment experience.'"[22] We find that to be true in this case.

Petitioner has engaged in counseling regarding abortion. She first testified that she had been to counseling three times, then said that she had five sessions, and later testified that she "went three times at, um, one center and then went once at another and then had two on the phone." Petitioner's attorney clarified that petitioner had six sessions where she either had counseling or a medical procedure. She has had three ultrasounds and has heard the unborn child's heartbeat. She understands that an abortion would "kill the [unborn] child inside [of her]."

---

[20] *In re Doe*, 973 So. 2d 548, 552 (Fla. App. 2008).

[21] See § 71-6901(5) (defining "[e]mancipated").

[22] *In re Petition of Anonymous 1, supra* note 15, 251 Neb. at 429, 558 N.W.2d at 788.

Petitioner testified that someone discussed the risks associated with terminating a pregnancy, including bleeding and a possibility of death, but petitioner did not otherwise expound on the substance of the counseling. Nor did she elaborate on a discussion she had with a cousin's mother. She presented no evidence regarding her understanding of the emotional and psychological consequences of abortion or of the immediate and long-range implications of the procedure.

Upon our de novo review, we conclude that petitioner has failed to establish by clear and convincing evidence that she is sufficiently mature and well informed. Thus, petitioner failed to establish any of the statutory grounds under § 71-6903(2) or (3). But petitioner raises other issues relating to her status as a ward of the State.

### Consent for Ward
### of State

Petitioner asserts that as a ward of the State of Nebraska, she has the right to consent to an abortion without the consent of the Department and that the district court "failed to give the relevant regulation the proper reading."[23] She relies upon a provision of the Nebraska Administrative Code which states that "[i]f a ward decides to have an abortion, the consent of the parent(s) or Department is not required, but notification [by the physician or the physician's agent to the parent] may be required unless the conditions listed below exist."[24] We first observe that the regulation has not been amended or superseded in light of the statutory change from parental notification to parental consent. But assuming that the regulation remains effective, we find no reason to rely upon it in the case before us.

Petitioner's argument fails because (1) it was not raised before the district court, (2) petitioner invoked a statutory procedure that circumscribed the specific grounds and the authorized relief, (3) the district court's jurisdiction arose from a legislative grant and was inherently limited by that grant, and

---

[23] Brief for petitioner at 15.

[24] 390 Neb. Admin. Code, ch. 11, § 11-002.04A (1998).

(4) petitioner did not seek relief in a forum where it might have been granted. We briefly discuss each problem.

[12] Although petitioner drew the district court's attention to the regulation, she did not raise it as an issue within the scope of the proceeding. Her petition made no reference to the Department. The issues in a case are framed by the pleadings.[25] The role of the Department was not raised by her petition, which was a standardized form. During the hearing, petitioner did offer a copy of the regulation as an exhibit and her attorney stated that "[i]t indicates it's the decision of the ward." But when asked whether she was offering it as an exhibit or "just as information" for the court, her attorney responded, "Just information for the Court or either way." Neither the exhibit nor the response illuminated any issue for the court or proposed any form of relief. This naturally followed from the limited scope of the proceeding, which we next examine.

[13] A petition for waiver of parental consent—which seeks authorization from the court to have an abortion without notarized written consent of a parent or guardian of the petitioner—is limited in scope. The scope of this special statutory proceeding is defined by §§ 71-6901, 71-6903, and 71-6904. Section 71-6901(10) defines "[p]regnant woman" as "an unemancipated woman under eighteen years of age who is pregnant or a woman for whom a guardian has been appointed pursuant to [Neb. Rev. Stat. §§] 30-2617 to 30-2629 [(Reissue 2008 & Cum. Supp. 2012)] because of a finding of incapacity, disability, or incompetency who is pregnant." There is no evidence of any appointment of a guardian for petitioner under §§ 30-2617 to 30-2629, nor does petitioner contend that she has such a guardian. Thus, § 71-6901(10) limited the availability of the procedure to "an unemancipated woman under eighteen years of age who is pregnant." Unlike the situation in *In re Petition of Anonymous 3*,[26] where the woman was emancipated, petitioner fell within the scope of this definition. Because petitioner met the definitional requirements, § 71-6903(2) and (3) authorized the district court to

---

[25] *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013).

[26] *In re Petition of Anonymous 3, supra* note 3.

consider only three questions: (1) whether petitioner was both sufficiently mature and sufficiently well informed to decide whether to have an abortion; (2) whether there was evidence of abuse, sexual abuse, or child abuse or neglect by a parent or guardian; or (3) whether it was in her best interests to have an abortion without the consent of a parent or guardian. Whether a ward needs to obtain consent for an abortion from the Department is a matter outside the parameters carefully prescribed by § 71-6903. And § 71-6904 simply provides the appeal procedure relating to § 71-6903. If petitioner fails to prove any of the three questions authorized under § 71-6903(2) and (3), the statute specifically requires the court to "dismiss the petition." This statute provides no mechanism for other relief.

[14-17] Because the district court's jurisdiction of this proceeding arose from a legislative grant, it was inherently limited by the grant. In *Cummins Mgmt. v. Gilroy*,[27] we recognized that forcible entry and detainer is a special statutory proceeding designed to provide a speedy and summary method for an owner to regain possession of real estate. We observed that the action was a creature of the Legislature and did not exist at common law.[28] The district court's jurisdiction arises out of legislative grant, and it is inherently limited by that grant.[29] And when a district court hears such an action, it sits as a special statutory tribunal to summarily decide the issues authorized by the statute, and not as a court of general jurisdiction with the power to hear and determine other issues.[30] Obviously, the subject matter of a proceeding under § 71-6901 et seq. is very different. But the legal principles are the same. Section 71-6903 is a creation of the Legislature and did not exist at common law.[31] The district court's jurisdiction over

---

[27] *Cummins Mgmt. v. Gilroy*, 266 Neb. 635, 667 N.W.2d 538 (2003).

[28] *Id.*

[29] See *id.*

[30] See *id.*

[31] See, 1991 Neb. Laws, L.B. 425, § 3; *In re Petition of Anonymous 1, supra* note 15.

proceedings pursuant to § 71-6901 et seq. arises from a legislative grant and is inherently limited by the grant. And because of the limited scope of an action pursuant to § 71-6901 et seq., in hearing such a matter, the district court acts as a special statutory tribunal to summarily decide the issues authorized by the statute. When the Legislature has expressly chosen a judicial forum for the resolution of these issues, it is not this court's province to rewrite the statute or suggest alternate or additional procedures to be utilized in this context, unless the judicial bypass statute violates the state or federal Constitutions or a federal treaty.[32] Petitioner makes no claim that the statutory procedure violates any constitutional provision or treaty obligation, but she nevertheless seeks to expand the issues beyond those authorized by the statute. This court has no power to do so.

[18,19] This is not a situation where there is no procedure by which relief could possibly be obtained. The Legislature has authorized a declaratory judgment action.[33] Moreover, the equity jurisdiction of the district court is granted by the Constitution and cannot be legislatively limited or controlled.[34] But whatever form of action might have been available to petitioner on this question, it clearly did not arise in a special statutory proceeding seeking judicial bypass of the parental consent requirement. Therefore, we do not reach the merits of this assignment of error.

## GUARDIAN

[20] Petitioner also argues that she has no guardian. We note that the Department is the legal guardian of all children committed to it.[35] Petitioner points us to a statute concerning guardians of minors[36] and asserts that a guardian must file a petition and be appointed a guardian by a court of competent

---

[32] *In re Petition of Anonymous 1, supra* note 15.

[33] See Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 2008).

[34] *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998).

[35] See Neb. Rev. Stat. § 43-905(1) (Cum. Supp. 2012).

[36] Neb. Rev. Stat. § 30-2608 (Reissue 2008).

jurisdiction. She argues that there is no evidence that her foster parents took such action and that thus, they are not her guardians. But whether petitioner's foster parents are her guardians is also a matter outside the scope of this special statutory proceeding. Accordingly, we do not reach the issue in this appeal.

## CONCLUSION

We do not consider petitioner's argument that the trial judge should have recused himself, because petitioner did not ask him to do so or otherwise question his impartiality at the trial level. We hold that for a waiver of consent under the "evidence of abuse . . . or child abuse or neglect" provision of § 71-6903(3), the pregnant woman must establish that a parent or guardian, who fills that role at the time she files her petition, has abused or neglected her. Petitioner did not meet her burden to show that she is a victim of such abuse or neglect. Nor did she establish that she is sufficiently mature and well informed about abortion to have the procedure without the consent of a guardian. Because the sole issues before the district court were whether petitioner established grounds for judicial authorization of an abortion without the consent of a parent or guardian under § 71-6903(2) or (3), we do not consider whether the Department must grant or withhold consent for its ward or whether petitioner's foster parents are her guardians. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

CONNOLLY, J., dissenting.

The petitioner has no legal parents; the juvenile court terminated their parental rights. Her legal guardian, the Department—by regulation—will not give her consent. And although the district court has required her to get her foster parents' consent to obtain an abortion, their consent would be meaningless under the law because they are neither parents nor guardians. She is in a legal limbo—a quandary of the Legislature's making.

Under Neb. Rev. Stat. § 71-6902 (Cum. Supp. 2012), there are three exceptions to the requirement that a minor obtain a parent or guardian's written, notarized consent to an abortion:

Except in the case of a medical emergency or *except as provided in sections 71-6902.01, 71-6903, and 71-6906*, no person shall perform an abortion upon a pregnant woman unless, in the case of a woman who is less than eighteen years of age, he or she first obtains the notarized written consent of both the pregnant woman and one of her parents or a legal guardian . . . .

Neb. Rev. Stat. §§ 71-6902.01 and 71-6906 (Cum. Supp. 2012) are, respectively, statutory exceptions to the consent requirement for victims of abuse and medical emergencies. I agree with the majority opinion that the exception for child abuse was intended to apply to the minor's current parents or guardians. And there was not a medical emergency.

This leaves only the judicial bypass procedure under § 71-6903, which provides:

(2) If a pregnant woman elects not to obtain the consent of her parents or guardians, a judge of a district court, separate juvenile court, or county court sitting as a juvenile court shall, upon petition or motion and after an appropriate hearing, authorize a physician to perform the abortion if the court determines by clear and convincing evidence that the pregnant woman is both sufficiently mature and well-informed to decide whether to have an abortion.

Under this section, the petitioner's election not to obtain the consent of a parent or guardian is a jurisdictional prerequisite, and because such consent was impossible to obtain here, there was no election. As such, I conclude that the court lacked subject matter jurisdiction to consider the petitioner's request for judicial bypass.

We have explained that subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved.[1] No one disputes that the district court has the power to generally hear and decide these types of cases. "'But the question of a court's subject matter jurisdiction does not turn solely on the court's

---

[1] See *Young v. Govier & Milone, ante* p. 224, 835 N.W.2d 684 (2013).

authority to hear a certain class of cases.'"[2] Instead, "'[i]t also involves determining whether a court has authority to address a particular question that it assumes to decide or to grant the particular relief requested.'"[3]

Based on the language of § 71-6903(2), the district court only "has authority . . . to grant the particular relief requested" if the petitioner has *elected* not to obtain the consent of a parent or guardian. To "elect" is to "choose." The petitioner did not choose to forgo consent of a parent or guardian; instead, such consent was impossible for her to obtain. Obviously, the petitioner has no parents to consent because the juvenile court terminated their parental rights. And it was impossible for the petitioner to obtain the written, notarized consent of her legal guardian, the Department.

When a court terminates parental rights to a minor ward, the Department makes all the medical decisions for the ward.[4] Except one. The Department's regulations show that it defers to a ward's decision to have an abortion. So the Department effectively consents to a minor ward's decision by default. More important here, however, its regulations prohibit a caseworker from explicitly giving or withholding consent for an abortion:

> A female ward has the right to obtain a legal abortion. The decision to obtain an abortion is the ward's. The child's worker will provide unbiased information to the ward regarding alternatives and appropriate agencies and resources for further assistance. *The worker will not encourage, discourage, or act to prevent or require the abortion.*
>
> If a ward decides to have an abortion, the consent of the parent(s) or Department is not required . . . .[5]

---

[2] *Nebraska Republican Party v. Gale*, 283 Neb. 596, 599, 812 N.W.2d 273, 276 (2012), quoting *In re Interest of Trey H.*, 281 Neb. 760, 798 N.W.2d 607 (2011).

[3] *Id.*

[4] See, 390 Neb. Admin. Code, ch. 7, § 001.01 (1998); 390 Neb. Admin. Code, ch. 11, §§ 002.04E and 002.04F (2000).

[5] 390 Neb. Admin. Code, ch. 11, § 11-002.04A (1998).

As such, the petitioner could not obtain written, notarized consent from either a parent or a guardian.

The petitioner raised these points at the trial level. The petitioner's appointed attorney specifically submitted evidence showing that (1) the parents' parental rights had been terminated; (2) the juvenile court had committed the petitioner to the Department's custody; (3) the Department had placed her in a foster home under the Department's supervision; and (4) the Department will not give or withhold consent for an abortion. Given these facts, the court could not conclude that the petitioner had elected not to obtain consent. And unless a court makes this finding, there is no predicate upon which the court could exercise its jurisdiction in a judicial bypass proceeding.

Moreover, the district court was wrong to conclude that the petitioner's foster parents were "her guardian[s] for [the] purpose of consent." The petitioner's foster parents are not her guardians. The court's commitment of a child to the Department means that the Department is his or her temporary legal guardian until a permanency plan is achieved or the child reaches majority.[6] Nor are the petitioner's foster parents on the same level as guardians; a foster parent's rights and responsibilities in caring for a ward of the State "are derivative of and subject to the custodial authority possessed by the [state] agency."[7] And noticeably, the Department authorizes foster parents to obtain only routine immunizations and medical care for a foster child, under a caseworker's supervision and direction.[8] This means a foster parent has no authority to give consent for a foster child's abortion or any other major medical procedure.

It is not surprising that a health care provider or a pregnant minor would mistakenly conclude that she could obtain a court's authorization for an abortion when she does not have

---

[6] See, Neb. Rev. Stat. § 43-285(1) (Cum. Supp. 2012); *In re Interest of Antonio S. & Priscilla S.*, 270 Neb. 792, 708 N.W.2d 614 (2005).

[7] 3 Donald T. Kramer, Legal Rights of Children § 29:4 at 153 (rev. 2d ed. 2005).

[8] See 390 Neb. Admin. Code, ch. 7, § 003.04 (2000).

a parent or guardian who can give consent. But this confusion exists because the Legislature has assumed under § 71-6902 that all minors will have a parent or guardian who *can* give consent. As this case illustrates, however, that is not always true. Here, that the petitioner has no parents and that the Department refuses to give or withhold consent for a ward's abortion creates jurisdictional problems under the written consent requirement that did not exist under the pre-2011 notification requirement. Summed up, a petitioner cannot "elect[] not to obtain" a written consent that no person or entity may legally give her. There was no triggering event to invoke the court's jurisdiction under § 71-6903(2).

But the majority opinion ignores these jurisdictional problems by not addressing the effect of the Department's regulation refusing to give or withhold consent for a minor ward's abortion. The majority opinion implies that the regulation may no longer be effective because in 2011 the Legislature changed the statutes from a requirement of parental notification to a requirement of parental consent. But even if it is effective, the majority opinion concludes it need not address the regulation's effect for these additional reasons: (1) The petitioner did not properly raise the issue to the district court; (2) the court's jurisdiction in a judicial bypass procedure is limited to the narrow issues to be decided; and (3) the petitioner did not seek relief in a proper forum. I disagree with each of these reasons.

At the outset, I note that the majority opinion incorrectly implies that the regulation is possibly ineffective because of the 2011 amendments. Agency regulations that are properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.[9] And we deal with the law as it is enacted and promulgated. Furthermore, because there are multiple reasons to support the regulation, this court should not implicitly conclude that the Department's decision not to change its regulations in response to the 2011 amendments is

---

[9] *Smalley v. Nebraska Dept. of Health & Human Servs.*, 283 Neb. 544, 811 N.W.2d 246 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 1631, 185 L. Ed. 2d 616 (2013).

mere inadvertence or a reason to avoid the regulation's effect in this proceeding.

It is not surprising that the Department would conclude that its consent is not required for a minor ward's abortion. The U.S. Supreme Court has held that states may impose parental consent and notification requirements on a minor seeking an abortion to ensure that an immature minor has the guidance of a parent. The rule is grounded in the constitutional protection afforded a parent's role in guiding the upbringing of his or her children.[10] And the absence of a parent with a recognized interest in guiding the minor's upbringing and decisionmaking negates that rationale.

Of course, even when a parent-child relationship does not exist, the State has responsibilities and legitimate interests in protecting a minor ward from harm. Moreover, the State has an interest in ensuring that her decision has not been coerced and in determining whether her pregnancy is the result of a sexual assault or child abuse. These concerns are obviously relevant to whether an abortion is in a minor's best interests under § 71-6903(3). And determining the petitioner's best interests was further complicated by her lack of a permanent family's support.

The Department, however, has abdicated its role in determining these issues. And despite the State's interest in protecting a minor ward's well-being, there are at least two reasons (and probably others) that the Department would nonetheless decline to advise a ward or consent to an abortion. Commentators have pointed out that state agencies frequently will not authorize an abortion for minor wards because no federal funding is available for the procedure or out of concerns that caseworkers will impose their own biases.[11]

As to the majority opinion's first reason for not relying on the regulation, this court cannot ignore jurisdictional problems because they were not raised in the "pleadings." An

---

[10] See *Bellotti v. Baird*, 443 U.S. 622, 99 S. Ct. 3035, 61 L. Ed. 2d 797 (1979).

[11] See Rachel Rebouché, *Parental Involvement Laws and New Governance*, 34 Harv. J.L. & Gender 175 (2011).

appellate court has the duty to determine whether the lower court had the power to enter the judgment or other final order sought to be reviewed.[12] Furthermore, the pleading for a judicial bypass is a form with blanks and checkmarks. It is intended to be a simple filing that a minor can navigate. The court does not appoint an attorney for the minor until after the minor files the petition. There is no place on this form for a petitioner to raise jurisdictional problems. And requiring a minor to meet the pleading standards of an attorney would likely place unconstitutional burdens on a minor seeking an abortion.[13]

As to the majority opinion's second reason for not relying on the regulation, the majority cannot avoid jurisdictional issues on the ground that a statutory proceeding is limited in the issues to be decided. Again, an appellate court has the duty to determine whether the lower court had the power to enter the judgment or other final order sought to be reviewed.[14] And a court's authority to act is never outside the scope of any proceeding.

And, finally, as to the majority's third reason for not relying on the regulation, this is the proper forum to determine the effect of the Department's regulation. As noted above, whether the petitioner's legal guardian can provide written, notarized consent for her abortion is a jurisdictional prerequisite for the court to entertain her request for judicial bypass. Furthermore, the majority's suggestion that the petitioner should have filed a declaratory judgment action to raise the consent issue ignores constitutional requirements. States that require parental notification or consent for an abortion are constitutionally required to provide expeditious proceedings for minors who claim that they do not need consent.[15] The Legislature has enacted the statutes in article 69 of chapter 71 of the Nebraska Revised Statutes specifically to create a cost-free and expeditious

---

[12] See *Smith v. Lincoln Meadows Homeowners Assn.*, 267 Neb. 849, 678 N.W.2d 726 (2004).

[13] See *Bellotti, supra* note 10.

[14] See *Smith, supra* note 12.

[15] See *Bellotti, supra* note 10.

proceeding. Declaratory judgment actions obviously do not fit that description.

Because the petitioner never "elect[ed]" not to get the consent of a parent or a guardian to seek an abortion, the court did not have jurisdiction to entertain her request for judicial bypass under § 71-6903(2). I realize that this conclusion means that none of the statutory exceptions apply and that under § 71-6902, the petitioner is prohibited from obtaining an abortion. An absolute ban on the petitioner's right to seek an abortion obviously raises constitutional concerns. But the petitioner did not challenge the statutes as unconstitutional.

McCormack, J., joins in this dissent.